**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CHANDRA CAMPBELL, individually and
on behalf of all others similarly situated,

Plaintiffs,

-against-

WHOLE FOODS MARKET GROUP, INC.,

Defendant.

Case No.: 1:20-cv-01291-GHW-OTW

ORAL ARGUMENT REQUESTED

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Brian R. Blackman (admitted *pro hac vice*)
bblackman@blaxterlaw.com
David P. Adams (admitted *pro hac vice*)
dadams@blaxterlaw.com
BLAXTER | BLACKMAN LLP
601 California Street, Suite 1505
San Francisco, CA 94108
Tel: (415) 500-7700

*Attorneys for Defendant Whole Foods*
*Market Group, Inc.*

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ......................................................................................................1

II.     PLAINTIFF'S ALLEGATIONS .............................................................................2

III.    ARGUMENT ...........................................................................................................3

    A.      Plaintiff's Claims for False and Misleading Advertising Fail as a
        Matter of Law. ..............................................................................................4

        1.      The Statement "Honey Graham Crackers" Is Not Misleading to
            Reasonable Consumers. ..................................................................5

            a.      The Phrase "Graham Crackers" Is Not Misleading .......................5

            b.      The "Honey" Representation Is Not Misleading ............................9

        2.      Plaintiff Has Not Alleged an Injury Under GBL Sections
            349 and 350...................................................................................10

        3.      Plaintiff Cannot Privately Enforce Alleged Violations of the FDCA........11

    B.      Plaintiff Fails to State a Claim for Fraud. ............................................................13

    C.      Plaintiff's Negligent Misrepresentation Claim Fails. ...........................................14

        1.      Plaintiff Fails to Allege a "Special Relationship".....................................14

        2.      The Economic Loss Rule Bars Plaintiff's Negligent Misrepresentation
            Claim.............................................................................................15

    D.      Plaintiff Fails to State a Plausible Breach-of-Warranty Claim. .............................16

        1.      Plaintiff's Claim for Breach of Express Warranty Fails ............................16

        2.      Plaintiff's Implied Warranty Claims Fail Because 365 Graham
            Crackers Are Fit for Consumption.............................................17

        3.      Plaintiff's Magnuson-Moss Warranty Act Claim Should Be Dismissed...17

    E.      Plaintiff Fails to State a Claim for Unjust Enrichment. .........................................18

    F.      Plaintiff Does Not Have Standing to Seek Injunctive Relief.................................19

IV.     CONCLUSION.......................................................................................................20

## TABLE OF AUTHORITIES

### STATE CASES

*Corsello v. Verizon N.Y., Inc.*
   967 N.E.2d 1177 (N.Y. 2012) ........................................................................... 18

*Kimmel v. Schaefer*
   675 N.E.2d 450 (N.Y. 1996) ............................................................................. 14

*Koch v. Acker, Merrall & Condit Co.*
   967 N.E.2d 675 (N.Y. 2012) ............................................................................... 4

*Morrow v. MetLife Inv'rs Ins. Co.*
   177 A.D.3d 1288 (4th Dept 2019) ...................................................................... 5

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*
   85 N.Y.2d 20 (N.Y. 1995) .................................................................................. 4

*Pesce Bros., Inc. v. Cover Me Ins. Agency of NJ, Inc.*
   144 A.D.3d 1120 (2d Dept 2016) ....................................................................... 5

### FEDERAL CASES

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ........................................................................................... 4

*Becerra v Dr Pepper/Seven Up, Inc.*
   945 F3d 1225 (9th Cir 2019) ........................................................................ 7, 13

*Belfiore v Procter & Gamble Co.*
   311 F.R.D. 29 (E.D.N.Y. 2015) ......................................................................... 8

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) ...................................................................................... 3, 4

*Berni v Barilla S.p.A.*
   964 F.3d 141 (2d Cir 2020) ........................................................................ 19, 20

*Bowling v Johnson & Johnson*
   65 F. Supp. 3d 371 (S.D.N.Y. 2014.) ............................................................... 17

*Brazil v. Dole Food Co.*
   935 F. Supp.2d 947 (N.D. Cal. 2013) ............................................................... 18

*Brown v Starbucks Corp.*
   No. 18-cv2286-JM-WVG, 2019 WL 996399 (S.D. Cal. Mar. 1, 2019) ............... 8

*Brumfield v. Trader Joe's Co.*
   No. 17-cv-3239-LGS, 2018 WL 4168956 (S.D.N.Y. Aug. 30, 2018) ......... 14, 16, 17

*Campbell v. Freshbev LLC*
    322 F. Supp. 3d. 330 (E.D.N.Y. 2018) ................................................................ 10

*Carmania Corp., N.V. v. Hambrecht Terrell Int'l*
    705 F. Supp. 936 (S.D.N.Y. 1989) .................................................................... 15

*Caronia v. Phillip Morris USA, Inc.*
    715 F.3d 417 (2d Cir. 2013) ............................................................................ 17

*Cohen v. JP Morgan Chase & Co.*
    498 F.3d 111 (2nd Cir. 2007)............................................................................. 5

*Colella v. Atkins Nutritional, Inc.*
    348 F. Supp. 3d 120 (E.D.N.Y 2018) .......................................................... 11, 16

*Daniel v. Mondelez Int'l, Inc.*
    287 F. Supp. 3d 177 (E.D.N.Y. 2018) ............................................................. 12

*Davis v. Hain Celestial Grp., Inc.*
    297 F. Supp. 3d 327 (E.D.N.Y. 2018) ..................................................... 4, 8, 13

*EED Holdings v. Palmer Johnson Acquisition Corp.*
    387 F. Supp. 2d 265 (S.D.N.Y. 2004) .............................................................. 15

*Elkind v. Revlon Consumer Prod. Corp.*
    No. 14-cv-2484-JS-AKT, 2015 WL 2344134 (E.D.N.Y. May 14, 2015) .................. 15, 19

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*
    783 F.3d 395 (2d Cir. 2015).............................................................................. 13

*Fink v. Time Warner Cable*
    714 F.3d 739 (2d Cir. 2013).............................................................................. 4

*Goldemberg v Johnson & Johnson Consumer Companies, Inc.*
    8 F. Supp. 3d 467 (S.D.N.Y. 2014.) ................................................................ 16

*Gordon v. Hain Celestial Grp., Inc.*
    No. 16-cv-6526-KBF, 2017 WL 213815 (S.D.N.Y. Jan. 18, 2017)................................ 15

*In re 100% Grated Parmesan Cheese Mktg. and Sales Practices Litig.*
    275 F. Supp. 3d 910 (N.D. Ill. 2017) ............................................................... 8, 9

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*
    No. 12-md-2413-RRM-RLM, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013)................ 18

*Izquierdo v. Mondelez Int'l, Inc.*
    No. 16-CV-4697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016)................ 5, 10, 11, 18, 19

*Kennedy v Mondelez Glob. LLC*
    No. 19-cv-302-ENV-SJB, 2020 WL 4006197 (E.D.N.Y. Jul. 10, 2020) ... 7, 10, 14, 17, 18

*Koenig v. Boulder Brands, Inc.*
    995 F.Supp.2d 274 (S.D.N.Y. 2014) ................................................................ 11

*Kommer v Bayer Consumer Health, a division of Bayer AG*
  710 Fed. Appx. 43 (2d Cir 2018) ................................................................... 19

*Lima v Post Consumer Brands, LLC*
  No. 18-cv-12100-ADB, 2019 WL 3802885 (D. Mass. Aug. 13, 2019) ...................... 9, 10

*Mantikas v. Kellog Co.*
  910 F.3d 633 (2d Cir. 2018) ................................................................. 4, 7, 8

*Melendez v. One Brands*
  No. 18-cv-06650-CBA-SJB, 2020 WL 1283793 (E.D.N.Y. Mar. 16, 2020) .................... 5

*Nashville Syrup Co. v. Coca Cola Co.*
  215 F. 527 (6th Cir 1914) .......................................................................... 5

*Nelson v. MillerCoors, LLC*
  246 F. Supp. 3d 666 (E.D.N.Y. 2017) ............................................................ 14

*Olson v. Major League Baseball*
  No. 20-cv-632, 2020 WL 1644611 (S.D.N.Y. Apr. 3, 2020) ................................... 18

*Orlander v. Staples, Inc.*
  802 F.3d 289 (2d Cir. 2015) ................................................................... 4, 11

*PDK Labs, Inc. v. Friedlander*
  103 F.3d 1105 (2d Cir. 1997) .................................................................... 11

*Quinn v. Walgreen Co.*
  958 F. Supp. 2d 533 (S.D.N.Y. 2013) ............................................................ 16

*Reyes v. Crystal Farms Refrigerated Distribution Co.*
  No. 18-cv-2250-NGG-RML, 2019 WL 3409883 (E.D.N.Y. July 26, 2019) .................... 12

*Sarr v. BEF Foods, Inc.*
  No. 18-cv-6409-ARR-RLM, 2020 WL 729883 (E.D.N.Y. Feb. 13, 2020) ............... 10, 12

*Schwartzco Enters. LLC v. TMH Mgmt., LLC*
  60 F. Supp. 3d 331 (E.D.N.Y. 2014) ............................................................ 13

*Segedie v Hain Celestial Group, Inc.*
  No. 14-cv-5029-NSR, 2015 WL 2168374 (S.D.N.Y. May 7, 2015) ............................ 15

*Sharpe v A&W Concentrate Co.*
  No. 19-cv-768-BMC, 2020 WL 4931045 (E.D.N.Y. Aug. 24, 2020) .......................... 20

*Solak v. Hain Celestial Grp., Inc.*
  No. 17-cv-0704-LEK-DEP, 2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018) ..................... 16

*Steele v. Wegmans Food Markets, Inc.*
  No. 19-cv-9227-LLS, 2020 WL 3975461 (S.D.N.Y. Jul. 14, 2020) ..................... 9, 10, 12

*Stolz v. Fage Dairy Processing Indus.*
  2015 WL 5579872 (E.D.N.Y Sept. 22, 2015) .............................................. 14, 15

*Verzani v. Costco Wholesale Corp.*
    No. 09-cv-2117-CM, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010)........................ 11, 12

*Werbel ex rel. v PepsiCo, Inc.*
    C 09-04456 SBA, 2010 WL 2673860 (ND Cal July 2, 2010) ........................................ 7

## STATUTES & REGULATIONS

15 U.S.C. § 2302(e) ......................................................................................................... 18

15 U.S.C. § 2310(d)(3)(A) ............................................................................................... 18

21 C.F.R. § 101.3 ............................................................................................................. 13

21 C.F.R. § 101.3(b) ........................................................................................................ 13

21 C.F.R. § 101.4 ............................................................................................................. 13

21 C.F.R. § 101.9 ............................................................................................................. 13

21 C.F.R. § 101.95(a) ...................................................................................................... 12

21 C.F.R. § 102.5(a) ........................................................................................................ 13

21 U.S.C. § 337(a) ........................................................................................................... 11

Fed. R. Civ. P. 9(b) ....................................................................................................... 2, 13

N.Y. Gen. Bus. Law § 349 ............................................................... 1, 4, 10, 11, 12, 16

N.Y. Gen. Bus. Law § 350 ............................................................... 1, 4, 10, 11, 12, 16

## I.     INTRODUCTION

Defendant Whole Foods Market Group, Inc. ("WFM Group") sells 365 Everyday Value Organic Honey Graham Crackers ("365 Graham Crackers"), at Whole Foods Market stores in New York state and other states across the country.  The product's front label reads "Organic Honey Graham Crackers" with images of a honey dipper and a plate of the rectangular crackers. The back-label identifies the use of organic wheat flour, organic cane sugar, organic whole wheat flour, organic honey and organic molasses among its ingredients.  Thus, the labeling and packaging of 365 Graham Crackers accurately disclose the product's ingredients and nutritional facts.

Plaintiff, however, alleges the front label is deceptive, and therefore violates New York General Business Law ("GBL") Sections 349 and 350, because the name "honey graham crackers" (coupled with a photograph of a honey dipper) implies to consumers that the product contains more whole-wheat flour than wheat flour and more honey than sugar.  Plaintiff's claims are implausible and should be dismissed.

When evaluating if a complaint states a plausible claim for relief, a court must make a context-specific determination drawing on its judicial experience and common sense.  Plaintiff's claims defy common sense.  It is commonly understood that a "graham cracker" is a light brown-colored cookie with a slightly sweet taste, often in a perforated rectangular shape.  Reasonable consumers do not assume that the term "graham cracker" refers to graham or whole-wheat flour and certainly do not assume that whole-wheat flour is the product's only or predominate ingredient.  Similarly, reasonable consumers of graham crackers do not assume the term "honey" means the cracker is sweetened exclusively or predominately by honey without any added sugar.

The reasonable consumer test requires more than a mere possibility that 365 Graham Crackers' packaging might conceivably be misunderstood by a few consumers viewing it in an unreasonably literal manner.  Moreover, any ambiguity created by the front label is resolved by consulting the product's ingredient list on the back of the box.  Plaintiff's claims for deceptive

advertising also fail because her First Amended Complaint ("FAC") does not allege any facts to support her claim of injury.

Unable to demonstrate consumer deception from a plain reading of the product's label, Plaintiff turns to various food label regulations under the Food, Drug & Cosmetic Act ("FDCA") in an effort to manufacture a basis for her false advertising claims. But, New York courts have made clear there is no private right of action to enforce the Food and Drug Administration's ("FDA") regulations under the FDCA. Congress intended that the FDA, not Plaintiff, interpret and enforce its own regulations. More to the point, the packaging and labeling of 365 Graham Crackers does not violate FDA regulations. Thus, her false advertising claims fail as a matter of law.

The FAC includes several other claims that should all be dismissed for the same reasons as their core false advertising claims and, in the alternative, because Plaintiff has not and cannot plead the necessary elements for each of those claims. Plaintiff's fraud claim fails to comply with Rule 9(b)'s heightened pleading standards by, among other things, failing to plead the requisite fraudulent intent. Plaintiff's negligent misrepresentation claim fails to plead the requisite special relationship between WFM Group and Plaintiff, and is barred by the economic loss doctrine. Plaintiff's breach of warranty claims should be dismissed because Plaintiff did not provide WFM Group with the requisite pre-suit notice, fails to allege the 365 Graham Crackers were inedible or otherwise not merchantable and fail to identify a written warranty subject to the Magnuson-Moss Warranty Act ("MMWA"). Plaintiff's unjust enrichment claim should be dismissed because it is duplicative of her other claims. Finally, Plaintiff lacks standing to seek injunctive relief. Because she is now aware of the ingredients in 365 Graham Crackers, there is no further risk that the product's packaging and labeling will deceive her.

## II.    PLAINTIFF'S ALLEGATIONS

WFM Group owns and operates Whole Foods Market stores in New York and several other states. (Dkt. No. 16 ("FAC") at ¶¶1-2, 86-8.) WFM Group sells a variety of food and beverage products under the private label brand "365 Everyday Value," including a graham

cracker snack labeled "Organic Honey Graham Crackers" above images of a honey dipper and plate of crackers. (*Id.* at ¶¶1-3.) As a retailer, WFM Group does not manufacture the private label graham crackers, but obtains them from a supplier.

Plaintiff alleges she purchased 365 Graham Crackers from a Whole Food Market store in New York throughout 2019. (FAC ¶88.) Plaintiff claims that the labeling of the 365 Graham Crackers misleads consumers into believing that the product contains more whole grain flour than non-whole grain flour and more honey than sugar. (FAC ¶4.) Plaintiff alleges the 365 Graham Crackers packaging represents "that honey is the exclusive, primary and/or most significant sweetener" in the crackers. (FAC ¶9.) She also alleges that the name "Honey Graham Crackers" gives consumers the impression that whole grain graham flour is the primary flour ingredient used. (FAC ¶39.)

The labeling for 365 Graham Crackers does not state that the crackers are sweetened primarily by honey. The ingredient list clearly identifies three sweeteners in descending order of predominance: organic cane sugar, organic honey and organic molasses. (FAC ¶30.) In addition, the ingredient list for 365 Graham Crackers does not state that more whole grain flour is used than non-whole grain flour. (*Id.*) Thus, the basis for Plaintiff's claims boils down to the contention that the name "Honey Graham Crackers" is itself deceptive. Specifically, she contends this product name misrepresents the "substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products." (FAC ¶¶107, 111, 119.)

Based on these allegations, Plaintiff asserts the following claims on behalf of herself and a class of New York consumers: (1) violation of New York consumer product law; (2) negligent misrepresentation; (3) breach of express warranty, breach of implied warranty and breach of the Magnuson-Moss Warranty Act; (4) fraud; and (5) unjust enrichment. (FAC ¶¶17-20.) Plaintiff seeks injunctive relief, restitution, damages, and punitive damages. (FAC ¶¶20-21.)

## III.    ARGUMENT

A court should grant a motion to dismiss when a plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  When ruling on a motion to dismiss, a court must accept factual allegations pleaded in the complaint as true, but it need not accept unreasonable inferences or legal conclusions cast in the form of factual allegations.  *Ashcroft v. Iqbal,* 556 U.S. 662, 681(2009) ("bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' of a . . . claim are not entitled to an assumption of truth"), quoting *Twombly*, 550 U.S. at 555.  "Nor does a complaint suffice if it 'tenders naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 678 (quoting *Twombly*,550 U.S. at 557).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between 'possibility and entitlement to relief.'"  *Id*., quoting *Twombly*, 550 U.S. at 557.  In making this "context-specific" determination, the Court must draw on its judicial experience and *common sense*."  *Iqbal*, 556 U.S. at 679. (emphasis added).

A.      **Plaintiff's Claims for False and Misleading Advertising Fail as a Matter of Law.**

Plaintiff claims that the front label of 365 Honey Graham Crackers is misleading in violation of New York's consumer protection laws.  GBL section 349 and 350 require Plaintiff "allege that [WFM Group] has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'"  *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675 (N.Y. 2012)).  As to the second element, Plaintiff must show that "a reasonable consumer acting reasonably under the circumstances" would be misled. *Mantikas v. Kellog Co.*, 910 F.3d 633, 636 (2d Cir. 2018).  A court may determine, as a matter of law, that an allegedly deceptive practice does not mislead a reasonable consumer.  *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

"To survive a motion to dismiss, plaintiff must allege statements that were 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"  *Davis v. Hain Celestial Grp., Inc.,* 297 F. Supp. 3d 327, 334 (E.D.N.Y. 2018) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 26 (N.Y. 1995)).  Courts

-4-

use "an objective inquiry" to determine if a statement would be likely to mislead reasonable consumers. *Melendez v. One Brands*, No. 18-cv-06650-CBA-SJB, 2020 WL 1283793, *6 (E.D.N.Y. Mar. 16, 2020) (citing *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2nd Cir. 2007)).

In addition, Plaintiff must plead an actual injury as a result of the alleged deception. Plaintiff's damages may be overpayment or payment of a price premium, but the alleged deception itself is not a cognizable injury. *See Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-4697, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016).

Plaintiffs' claims for false and misleading advertising fail for several reasons. First, the use of "Honey Graham Crackers" on the snack's front label is not misleading to a reasonable consumer. Second, Plaintiff has not alleged an injury sufficient to establish her false advertising claims. Finally, Plaintiff cannot privately enforce alleged violations of federal regulations under the FDCA.

## 1. The Statement "Honey Graham Crackers" Is Not Misleading to Reasonable Consumers.

A false or misleading statement or conduct is the threshold requirement of an action for false advertising, misrepresentation and fraud. *See Morrow v. MetLife Inv'rs Ins. Co.*, 177 A.D.3d 1288, 1289 (4th Dept 2019); *Pesce Bros., Inc. v. Cover Me Ins. Agency of NJ, Inc.*, 144 A.D.3d 1120, 1122 (2d Dept 2016.) Here, Plaintiff breaks the name of the product ("Honey Graham Crackers") in two, contending the statement "Honey" is a misleading ingredient claim (i.e., no added sugar) and the statement "Graham Crackers" is a separately misleading ingredient claim (i.e., only whole wheat flour). Leaving aside that fact that reasonable consumers would review these terms together to describe the honey flavored rectangular snack treat classically used in s'mores, Plaintiff's allegations fail to establish the statements are materially misleading.

### a. The Phrase "Graham Crackers" Is Not Misleading

Plaintiff asserts that the phrase "Graham Crackers" is materially misleading because it suggests that the product is made predominately with whole-wheat flour. The phrase "graham

cracker," however, is not an ingredient statement and does not suggest that 365 Graham Crackers are made with a specific type of flour or a particular proportion of whole grain flour as compared to other ingredients.  Rather, those terms signal that the product *is* a graham cracker—a light brown-colored cracker with a characteristic sweet taste, often in a perforated rectangular shape.

Reasonable consumers would not assume that "graham flour" or whole-wheat flour is the only or predominant ingredient.  Indeed, the dictionary definitions cited by Plaintiff do not define a "graham cracker" as a cracker *made predominately* with whole-wheat flour.  Instead they define a "graham cracker" as "a slightly sweet cracker made of whole wheat flour" and "a semisweet cracker, usually rectangular in shape, made chiefly with whole-wheat flour."  The terms "made" and "made chiefly"[1] do not describe a quantum or percentage of whole-wheat flour required to make a cracker a graham cracker.  As Plaintiff's own evidence shows there is no consensus that a "graham cracker" must be made predominantly with whole-wheat flour.  And, as Plaintiff does not dispute, 365 Graham Crackers do, in fact, contain whole-wheat flour.

Courts have long rejected similar hyper-literal interpretations of compound words.  In *Nashville Syrup Co. v. Coca Cola Co.,* the court rejected a claim that the term 'Coca-Cola' suggested that the beverage "is composed mainly or in essential part of the coca leaves and the cola nut." *Nashville Syrup Co. v. Coca Cola Co.,* 215 F. 527, 531 (6th Cir 1914.)  The court explained:

> The use of a compound name does not necessarily indicate that the article to which the name is applied contains the substances whose names make up the compound.  Thus, soda water contains no soda; the butternut contains no butter; cream of tartar contains no cream; nor milk of lime any milk.  Grape fruit is not the fruit of the grape; nor is bread fruit the fruit of bread; the pineapple is foreign to both the pine and the apple; and the manufactured food known as Grape Nuts contains neither grapes nor nuts.

*Nashville Syrup Co. v Coca Cola Co*., 215 F at 532.

---

[1]  "Chiefly" is defined as "most importantly" or "mainly."  (https://www.merriam webster.com/dictionary/chiefly.)

More recently, in *Werbel ex rel. v. PepsiCo, Inc.*, the court rejected plaintiff's claims that the name "Crunch Berries" implies the product is made from crunchy berries.

> [T]he FAC alleges that members of the public are likely to be deceived into believing that Cap'n Crunch derives nutrition from actual fruit by virtue of the reference to 'Berries' and because the Crunch Berries allegedly are 'shaped to resemble berries.' Nonsense. It is obvious from the product packaging that no reasonable consumer would believe that Cap'n Crunch derives any nutritional value from berries." (Citations omitted.) *Werbel ex rel. v PepsiCo, Inc.*, C 09-04456 SBA, 2010 WL 2673860, at *3 (ND Cal July 2, 2010.)

*See Becerra v Dr Pepper/Seven Up, Inc.,* 945 F3d 1225, 1229 (9th Cir 2019) (rejecting claim that, when read in its proper context, the term "diet" promises weight loss or management).

In *Kennedy v. Mondelez Global, LLC,* a similar case brought by Plaintiff's attorney challenging the packaging and labeling of Nabisco's Honey Maid graham crackers, the court rejected plaintiff's claims of false advertising.   The court explained:

> The word "graham" when included in the term "grahams" or the phrase "graham crackers" does not connote graham flour.  A reasonable consumer hearing the term "graham," even without the word "cracker," thinks first and foremost of a slightly sweet, darker-colored, rectangular, and perforated cracker.  It is a type of cracker that is used in desserts like s'mores.  The Court also does not believe a reasonable consumer would associate "graham" as meaning "graham flour," and as a result assume that graham flour is either the predominant ingredient in the product or that graham flour predominates over other types of flour.

*Kennedy v Mondelez Glob. LLC*, No. 19-cv-302-ENV-SJB, 2020 WL 4006197, at *9 (E.D.N.Y. Jul. 10, 2020.)

The label "graham cracker" is distinguishable from the labeling challenge addressed in *Mantikas v Kellogg Co*., 910 F.3d 633 (2d Cir. 2018).  In that case, plaintiff claimed that CheezIt crackers labeled "whole grain" and "made with whole grain" were deceptively labeled because the crackers were made predominately with white flour.  The court held that "[t]he representation that a cracker is 'made with whole grain' would thus plausibly lead a reasonable consumer to

conclude that the grain ingredient was entirely, or at least predominately, whole grain."
*Mantikas v Kellogg Co.*, 910 F.3d at 638.  Here, in contrast, the packaging and labeling of 365
Graham Cracker do not state the crackers are "made with whole grain" or "made with graham
flour."  Instead the label simply refers to the common name for the product: a "graham cracker."

Moreover, even if the term "graham cracker" is ambiguous, the allegedly misleading
statement must be read in context.  *See Belfiore v Procter & Gamble Co*., 311 F.R.D. 29, 53
(E.D.N.Y. 2015) ("Courts view each allegedly misleading statement in light of its context on the
product label or advertisement as a whole.  The entire mosaic is viewed rather than each tile
separately.") (citations omitted.)  "If a plaintiff alleges that an element of a product's label is
misleading, but another portion of the label would dispel the confusion, the court should ask
whether the misleading element is ambiguous.  If so, the clarification can defeat the claim."
*Davis v. Hain Celestial Grp.*, *supra,* 297 F. Supp.3d at 334.  Here, the ingredient list accurately
reflects that 365 Graham Crackers are made with organic whole-wheat flour and that it contains
more organic wheat flour than organic whole-wheat flour.  Thus, the product's packaging
accurately communicates its content and ingredients, and reasonable consumer are not misled
into believing that 365 Graham Crackers contain more whole-wheat flour than other flours or
ingredients.

In *In re 100% Grated Parmesan,* the plaintiff made a similarly implausible argument
claiming that "100% Grated Parmesan Cheese" was misleading because it falsely implied that
the product *only* contained grated parmesan cheese, even though it also contained cellulose and
potassium sorbate.  *In re 100% Grated Parmesan Cheese Mktg. and Sales Practices Litig*., 275
F. Supp. 3d 910, 917 (N.D. Ill. 2017).  The court rejected plaintiff's claim:

> Plaintiffs' claims are doomed by the readily accessible ingredient
> panels on the products that disclose the presence of non-cheese
> ingredients.  Although "100% Grated Parmesan Cheese" might be
> interpreted as saying that the product is 100% cheese and nothing
> else, it also might be an assertion that 100% of the cheese is
> parmesan cheese, or that the parmesan cheese is 100% grated.
> Reasonable consumers would thus need more information before

> concluding that the labels promised only cheese and nothing more, and they would know exactly where to look to investigate—the ingredient list.  Doing so would inform them that the product contained non-cheese ingredients.

*Id.* at 923.; *Brown v Starbucks Corp*., No. 18-cv2286-JM-WVG, 2019 WL 996399, at *3 (S.D. Cal. Mar. 1, 2019) (reasonable consumer not misled by packaging that lists "apple, watermelon, tangerine and lemon flavored candies" on front of product into believing sour gummies were flavored *only* with fruit.)  Because Plaintiff has not, and cannot plausibly allege that a reasonable consumer would be deceived by 365 Graham Crackers' product name, her claim that the label's use of the phrase "Graham Crackers" is deceptive because the product contains more wheat flour than whole-wheat flour fails as a matter of law.

### b.    The "Honey" Representation Is Not Misleading

Plaintiff next asserts that because the product name uses the term "Honey," alongside an image of a honey dipper and in a bowl of honey, the product's packaging is misleading because it leads consumers to believe the product contains more honey than sugar.  (FAC ¶¶3, 4.)  This claim fails for three reasons: 1) the packaging does not represent that honey is used as a sweetener as opposed to a flavoring; 2) even if the packaging represents that honey is used as a sweetener, it certainly does not suggest that it is the predominate sweetener; and 3) to the extent there is any ambiguity, the ingredient label makes clear that cane sugar and molasses are also used to sweeten the product.

First, the term "honey" in the product's name and the image of a honey dipper is not an ingredient statement.  The packaging does not say "made only with honey" or "sweetened with honey."  Instead the term and image refer to the characteristic flavor of the product.  Indeed, Plaintiff admits that honey is used in the product as a flavoring.  (FAC ¶64.)  "[W]here honey is a flavor as well as a sweetener, Plaintiffs have not plausibly alleged that [defendant's] use of the word 'honey' and the images of a sun, bee, and honey dipper is 'false or misleading….'"  *Lima v Post Consumer Brands, LLC*, No. 18-cv-12100-ADB, 2019 WL 3802885, at *6 (D. Mass. Aug. 13, 2019), *reconsideration denied*, 2019 WL 4889599 (D. Mass. Oct. 2, 2019); *see also Steele v*

*Wegmans Food Markets, Inc*., No. 19-cv-9227-LLS, 2020 WL 3975461, at *2 (S.D.N.Y. Jul. 14, 2020) (ice cream labeled "vanilla" is not deceptive even if there is only *de minimis* amount of vanilla in product; nothing in packaging suggested product *only* flavored with natural vanilla.)

Second, nothing in the term "honey" or image of a honey dipper suggests that the product is sweetened primarily with honey. The labeling and packaging do not claim that the product is "only" or "exclusively" sweetened by honey. And, as Plaintiff acknowledges, the product *is* in fact sweetened with honey. (FAC ¶30.) *Kennedy v Mondelez Glob. LLC, supra,* 2020 WL 4006197, at *12 ("Sweetening grahams with honey does not foreclose the use of other sweeteners or make the representation deceptive."); *see also Sarr v. BEF Foods, Inc.*, No. 18-cv-6409, 2020 WL 729883, at *4, *5 (E.D.N.Y. Feb. 13, 2020) (use of phrase "Made with Real … Butter" is not likely to mislead reasonable consumers despite product's use of margarine as ingredient); *Campbell v. Freshbev LLC,* 322 F. Supp. 3d. 330, 341 (E.D.N.Y. 2018) (rejecting, as implausible, claim that label statement "cold-pressed" misleading because "[t]here is no 'only' or 'exclusively' modifier before 'cold-pressed' to indicate that the juice has been subjected to no other process.").

Third, even if the term "honey" and image of a honey dipper are ambiguous, the ingredient label makes clear that cane sugar and molasses are also used to sweeten the product. *Lima v Post Consumer Brands, LLC*, *supra,* 2019 WL 3802885, at *7 (holding "'Honey Bunches of Oats' with honey dipper was not deceptive because [t]he packaging . . . makes no objective representation about the amount of honey, leaving the cereal's accurate list of ingredients as the only unambiguous representation of the amount of honey relative to other sweeteners.") Because the name "honey graham crackers" and the image of honey in a honey dipper would not mislead a reasonable consumer into believing that the product is primarily sweetened with honey, Plaintiff's "honey" claim fails as a matter of law.

2. **Plaintiff Has Not Alleged an Injury Under GBL Sections 349 and 350.**

To sufficiently plead an injury under GBL Sections 349 and 350, Plaintiff must allege that, "on account of a materially misleading practice, [she] purchased a product and did not

receive the full value of [her] purchase*." Izquierdo v. Mondelez Int'l, Inc., supra,* 2016 WL

6459832, at *7, citing *Orlander v. Staples*, Inc., 802 F.3d 289, 302 (2d Cir. 2015)).  Injury can be

"overpayment or [payment of a] price premium, whereby a plaintiff pays more than [ ]he would

have but for the deceptive practice." *Id*., citing *Koenig v. Boulder Brands, Inc*., 995 F. Supp. 2d

274, 288-289 (S.D.N.Y. 2014).  "Simply ... recit[ing] the word 'premium' multiple times in the[ ]

Complaint does not make Plaintiffs' injury any more cognizable."  *Id*.

      Here, Plaintiff's price premium allegations do not constitute an injury.  While she does

allege that she paid "approximately no less than $3.99 per box," she does not allege the price of

any comparable products.  (FAC ¶76.)  Without any facts to support her conclusory price

premium claim, Plaintiff fails to allege an actual injury.  *Colella v. Atkins Nutritional, Inc*., 348

F. Supp. 3d 120, 143 (E.D.N.Y 2018) (plaintiff "provided no facts regarding what the premium

was, what price he paid for the products, or the price of non-premium products.").  Thus,

Plaintiff fails to allege an injury in the FAC, and her GBL Sections 349 and 350 claims should be

dismissed with prejudice.

      **3.**     **Plaintiff Cannot Privately Enforce Alleged Violations of the FDCA.**

      While Plaintiff purports to base her deceptive labeling claim on New York's consumer

protection laws, her FAC also alleges that the labeling and packaging of 365 Graham Crackers is

"inconsistent" with FDCA regulations.  (FAC ¶¶65-69.)  Any claim based on alleged FDCA

violations must fail because:  (i) there is no private right of action under the FDCA, (ii) any

technical violation of an FDA regulation is not a *pre se* material misrepresentation, and (iii) the

labeling and packaging of 365 Graham Crackers complies with FDA regulations.

      There is no private right of action under the FDCA: "[A]ll such proceedings for the

enforcement, or to restrain violations, of this chapter shall be by and in the name of the United

States."  21 U.S.C. § 337(a); *see also PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d

Cir. 1997) (there can be no private cause of action if plaintiff's "true goal is to privately enforce

alleged violations of the FDCA"); *Verzani v. Costco Wholesale Corp.,* No. 09-cv-2117-CM,

2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010) ("The FDCA lacks a private right of action

and therefore [a plaintiff] cannot rely on it for purposes of asserting a state-law consumer claim under G.B.L. § 349"), aff'd, 432 Fed. Appx. 29 (2d Cir. 2011).

Even if Plaintiff could privately enforce FDCA regulations, the 365 Graham Crackers label does not merely violate the GBL because of some alleged technical violation of the FDCA's regulations. Rather, Plaintiff still must show an objectively material misrepresentation on the 365 Graham Crackers' packaging. *See e.g., Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 190 (E.D.N.Y. 2018) ("Plaintiff's statutory claims fail because non-functional slack-fill as defined by the FDCA and parallel state statutes, even assuming its existence, are not per se material misrepresentations under sections 349 and 350 … New York courts [] have adopted an objective definition of what constitutes a 'material misrepresentation' under section 349 and 350, which, unlike federal law, takes context into account.") Plaintiff has not done that because she has not shown that the perceptions of ordinary consumers align with their interpretation of the FDCA's labeling regulations.[2] Her contention that consumer expectations are set by a convoluted web of labeling regulations strains credulity. (FAC ¶¶65-69.) Plaintiff fails to allege facts showing that consumers have any understanding of these regulations. What consumers expect is a graham cracker that tastes of honey, which is exactly what they get.

Finally, despite Plaintiff's suggestions otherwise, 365 Graham Crackers do comply with the relevant FDA regulations. FDCA and FDA regulations require that a food products' "statement of identity" can consist of either "[t]he common or usual name of the food" or,

---

[2] As here, plaintiffs in *Steele, Sarr*, and *Reyes* (all brought by the same plaintiff's attorney in this action) premised some of their false advertising claims on alleged violations of FDCA labeling regulations. *Steele v. Wegmans Food Markets, Inc., supra,* 2020 WL 3975461, at *1 (alleging violations of FDCA vanilla and ice cream flavor regulations); *Sarr v. BEF Foods, Inc., supra,* 2020 WL 729883, at *5 (alleging statement "Made with Fresh Whole Potatoes" is false with regards to Defendants' mashed potatoes because FDA regulations define "fresh" as food "in its raw state and has not been frozen or subjected to any form of thermal processing or any other form of preservation."), citing 21 C.F.R. 101.95(a); *Reyes v. Crystal Farms Refrigerated Distribution Co.,* No. 18-cv-2250-NGG-RML, 2019 WL 3409883, at *4 (E.D.N.Y. July 26, 2019) (same). In each case, the court held that technical violations of FDCA regulations were meaningless in proving plaintiff's GBL claims because they were not tethered to consumer expectations. *Steele,* 2020 WL 3975461, at *2 ("the extensive discussion and argument in the motion papers with respect to particular federal ice cream flavor descriptions is without consequence."); *Sarr*, 2020 WL 729883, at *5 (reasonable consumer understand that mashed potatoes are not fresh potatoes); *Reyes*, 2019 WL 3409883, at *4 (same).

alternatively, "[a]n appropriately descriptive term, or when the nature of the food is obvious, a fanciful name commonly used by the public for such a food." 21 C.F.R. § 101.3(b).  The regulations make clear that the name of the food product itself does not need to refer to its ingredients and certainly not all of its ingredients.  The name "Honey Graham Crackers" accurately identifies in simple and direct terms the basic nature of the food—a honey flavored graham cracker—and identifies the product by its common or usual name.  21 C.F.R. §§102.5(a) and 101.3.

FDCA and FDA regulations further provide that the food product's labeling must include a nutritional label and an ingredient list.  21 C.F.R. §§ 101.4 and 101.9.  Plaintiff concedes that the packaging of 365 Graham Crackers includes the required ingredient list and nutritional label.  (FAC ¶¶44, 49.)

## B.   Plaintiff Fails to State a Claim for Fraud

To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015).  Moreover, "[c]laims sounding in fraud or mistake are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that such claims "state with particularity the circumstances constituting fraud or mistake." *Becerra*, 945 F3d at 1228.  Rule 9(b) is satisfied when the complaint specifies 'the time, place, speaker, and content of the alleged misrepresentations;' [and] how the misrepresentations were fraudulent." *Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 344 (E.D.N.Y. 2014) (internal citation omitted).

Plaintiff alleges that WFM Group's "fraudulent intent is evinced by its failure to accurately identify the Products [sic] on the front label when it knew this was not true."  (FAC ¶128.)  But "[t]he simple knowledge that a statement is false is not sufficient to establish fraudulent intent." *Davis v. Hain Celestial Grp.*, 297 F. Supp.3d 327, 337 (E.D.N.Y. 2018.)

-13-

Additionally, as discussed in Section A, above, no misrepresentation has been identified. "Where a consumer protection claim fails [because no misrepresentation has been found], so must a fraud claim." *Kennedy v. Mondelez Glob. LLC, supra*, 2020 WL 4006197, at *14; *Brumfield v. Trader Joe's Co.*, No. 17-cv-3239-LGS, 2018 WL 4168956, at *5 (S.D.N.Y. Aug. 30, 2018) (dismissing fraud claim after finding that label "black truffle flavored" was not deceptive.)  Accordingly, Plaintiff's claim for fraud must be dismissed.

## C.   Plaintiff's Negligent Misrepresentation Claim Fails

Plaintiff fails to state a claim for negligent misrepresentation because she fails to plead that a special relationship existed between herself and WFM Group, and the claim is barred by the economic loss doctrine.

### 1.   Plaintiff Fails to Allege a "Special Relationship"

To plead a claim for negligent misrepresentation, Plaintiff must allege that WFM Group owed her "a duty of care due to a special relationship." *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 677 (E.D.N.Y. 2017).  In a commercial transaction, such a duty "has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Kimmel v. Schaefer*, 675 N.E.2d 450, 545 (N.Y. 1996).

Plaintiff's conclusory allegation that WFM Group owed her a duty because it holds "itself out as having special knowledge and experience in the production, service and/or sale of the product" is insufficient.  (FAC ¶114.)  "[I]f this alone were sufficient, a special relationship would necessarily always exist for purposes of misbranded food claims, which is not the case." *Stolz v. Fage Dairy Processing Indus.*, 2015 WL 5579872 at *25 (E.D.N.Y Sept. 22, 2015).

In *Stoltz*, the court rejected the claim that the maker of yogurt held itself out as having special knowledge in the making of yogurt: "[t]he requisite special relationship may not, however, be based solely on Defendants' status as the manufacturer of the Total 0% Products because, if this alone were sufficient, a special relationship would necessarily always exist for purposes of misbranded food claims, which is not the case." *Stolz v. Fage Dairy Processing*

-14-

*Indus.,* 2015 WL 5579872, at \*25; *see also Segedie v Hain Celestial Group, Inc*., 14-cv-5029-NSR, 2015 WL 2168374, at \*14 (S.D.N.Y. May 7, 2015) ("Defendant's obligation to label products truthfully does not arise from any special relationship. There is nothing approximating privity between the parties.")  Plaintiff fails to allege any facts demonstrating that her purchase of 365 Graham Crackers was anything more than an ordinary commercial transaction.

### 2.    The Economic Loss Rule Bars Plaintiff's Negligent Misrepresentation Claim

Plaintiff's negligent misrepresentation claim should also be dismissed because it is barred by the economic loss doctrine.  "The economic loss doctrine restricts the remedy of plaintiffs who have suffered economic loss, but not personal or property injury, to an action in contract." *Elkind v. Revlon Consumer Prod. Corp*., No. 14-cv-2484-JS-AKT, 2015 WL 2344134, at \*12 (E.D.N.Y. May 14, 2015), citing *EED Holdings v. Palmer Johnson Acquisition Corp*., 387 F. Supp. 2d 265, 277 (S.D.N.Y. 2004).  "If the damages suffered are of the type remediable by contract, a plaintiff may not recover in tort." *Carmania Corp., N.V. v. Hambrecht Terrell Int'l*, 705 F. Supp. 936, 937 (S.D.N.Y. 1989) (collecting cases).  The economic loss rule "applies to claims for negligent misrepresentation." *Elkind*, 2015 WL 2344134, at \*12 (dismissing negligent misrepresentation claim with prejudice).  Allegations that "plaintiff and the putative class members purchased products they would have otherwise purchased at a lesser price or not at all" are subject to the economic loss doctrine. *Gordon v. Hain Celestial Grp., Inc.*, No. 16-cv-6526-KBF, 2017 WL 213815, at \*6 (S.D.N.Y. Jan. 18, 2017) (dismissing negligent misrepresentation claim with prejudice).

Here, Plaintiff fails to allege that she suffered personal or property injury.  Instead, she alleges: "Plaintiffs and class members would not have purchased the Products [sic] or paid as much if the true facts had been known, suffering damages." (FAC ¶¶109, 117.)  As *Gordon* makes clear, such damage allegations do not provide grounds for tort recovery, and this Court should dismiss Plaintiffs' negligent misrepresentation claim with prejudice.

**D.      Plaintiff Fails to State a Plausible Breach-of-Warranty Claim**

**1.      Plaintiff's Claim for Breach of Express Warranty Fails**

To state a claim for breach of express warranty under New York law, a buyer must provide a seller with timely notice of an alleged breach of warranty.  *Colella,* 348 F. Supp. 3d at 143.  Plaintiff alleges that she "provided or will *provide* notice to defendant…" (Emphasis added.)  (FAC ¶122.)  But New York law requires that a plaintiff affirmatively allege she has provided notice, not simply that she may or may not have done so.  *Quinn v Walgreen Co*., 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013.)

Additionally, "a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Goldemberg v Johnson & Johnson Consumer Companies, Inc*., 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014.)  Plaintiff's breach of warranty claims are based on the same assertions she made regarding labeling and packaging (that is, the labeling and packaging of 365 Graham Cracker imply that cracker contains more whole-wheat flour than wheat flour and more honey than sugar), which Plaintiff claims violate GBL sections 349 and 350.  (FAC ¶119.)  As with her deceptive advertising claims, Plaintiff cannot prevail on her breach of warranty claim because the labeling and packaging of 365 Graham Crackers are not likely to mislead a reasonable consumer.  *Solak v Hain Celestial Group, Inc.,* No. 17-cv-0704-LEK-DEP, 2018 WL 1870474, at *11 (N.D.N.Y. Apr. 17, 2018) ("[B]ecause those three representations . . . are insufficient as a matter of law to mislead a reasonable consumer, they cannot be relied upon by Plaintiffs as grounds for asserting a breach of express warranty . . .)

Moreover, the packaging and labeling of 365 Graham Crackers does not make any actionable warranty.  The labeling and packaging do not warrant that the crackers contain predominately whole-wheat flour or honey.  In *Brumfield*, the court dismissed plaintiff's claim that Trader Joe's Truffle Oil breached an express warranty when it did not in fact contain actual truffles:

-16-

> The Complaint identifies only one express warranty: Trader Joe's "expressly warranted that Trader Joe's Truffle Oil was, in fact, flavored by black truffle." However, that is not what the Product label warrants; it states that the olive oil is "Black Truffle Flavored." That is what Plaintiffs received when they purchased the Product—olive oil that tasted like black truffle. As a result, the fact that the Product did not contain actual black truffle did not constitute a breach of express warranty, and that claim is dismissed.

*Brumfield v Trader Joe's Co.*, *supra,* 2018 WL 4168956, at *3.

Similarly, in *Kennedy* the court rejected plaintiffs' breach of warranty claims based on the packaging and labeling of Nabisco and Honey Maid graham crackers. *See, Kennedy v. Mondelez Glob. LLC, supra*, 2020 WL 4006197, at *15 ("[T]he graham and whole grain statements do not warrant that more whole grains than white flour are in the crackers. And the honey statements do not warrant that more honey than sugar is used or that honey is the predominant sweetener. Thus, there is no basis to claim a breach of any express warranty. . .") Accordingly, Plaintiff's claim for breach of express warranty should be dismissed with prejudice.

**2.      Plaintiff's Implied Warranty Claims Fail Because 365 Graham Crackers Are Fit for Consumption.**

Under New York law, the implied warranty of merchantability "requires only that the good sold be of a minimal level of quality." *Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 433 (2d Cir. 2013). If Plaintiff challenges the merchantability of a food product, she must allege the food was "unfit to be consumed." *Brumfield,* 2018 WL 811530, at *4. Here, because Plaintiff does not allege that 365 Graham Crackers were unfit for consumption, her breach of implied warranty claims must be dismissed.

**3.      Plaintiff's Magnuson-Moss Warranty Act Claim Should Be Dismissed.**

The Magnuson-Moss Warranty Act ("MMWA") "defines a 'warranty' as a 'written affirmation' that a consumer product will be 'defect free or will meet a specified level of performance over a specified period of time.'" *Bowling v Johnson & Johnson*, 65 F. Supp. 3d 371, 377-78 (S.D.N.Y. 2014.) The packaging and labeling of 365 Graham Crackers and the product name "Organic Honey Graham Crackers" does not meet the requirements of the MMWA. It does not warrant that the product is defect free or that it will meet a specified level

of performance.  *In re Frito-Lay N. Am., Inc. All Nat. Litig.,* 12-md-2413-RRM-RLM, 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013) (dismissing MMWA claims because "[a]n 'All Natural' label does not warrant a product free from defect.")

Additionally, the MMWA precludes claims where "amount in controversy of any individual claim is less than the sum or value of $25" and where the product costs less than $5. 15 U.S.C. §2310(d)(3)(A) and §2302(e).  Here Plaintiff alleges that she bought a box of the product for $3.99.  (FAC ¶¶76, 88.)  These allegations preclude a claim under the MMWA. *Brazil v. Dole Food Co.,* 935 F. Supp.2d 947, 965-66 (N.D. Cal. 2013).

### E.       Plaintiff Fails to State a Claim for Unjust Enrichment

Plaintiff's claim for unjust enrichment fails because she does not allege any theory on which to recover, and has thus failed to show "that the defendant has at the plaintiff's expense been enriched and unjustly so."  *Olson v. Major League Baseball*, No. 20-cv-632, 2020 WL 1644611, at *10 (S.D.N.Y. Apr. 3, 2020), *reconsideration denied,* -- F.Supp.3d --, 2020 WL 3025280 (June 5, 2020); see also *Kennedy v Mondelez Glob. LLC, supra*, 2020 WL 4006197, at *15 (dismissing plaintiffs' unjust enrichment claims because they failed to allege deceptive trade practices or any other claim.)

In addition, Plaintiff's unjust enrichment claim should be dismissed because it is duplicative of her other claims and she already has an adequate remedy at law.  "[U]njust enrichment is not a catchall cause of action to be used when others fail. . . . An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012); see also *Izquierdo,* 2016 WL 6459832, at *9-10 (dismissing unjust enrichment claims as duplicative of plaintiffs' other claims).

Plaintiff's unjust enrichment cause of action relies entirely upon the same facts as Plaintiff's other causes of actions and thus must be dismissed.  (FAC ¶¶130-131.)  Further, as Plaintiff's other alleged causes of action make clear, Plaintiff already has a number of other adequate remedies at law.  While Plaintiff's remedies at law fail for the reasons stated above,

-18-

Plaintiff cannot cure those deficiencies with an unjust enrichment claim.  *See Izquierdo*, 2016 WL 6459832, at *10 ("Here, all of Plaintiffs' causes of action have been dismissed. Their unjust enrichment claim cannot cure the failings of their other causes of action.").

## F.    Plaintiff Does Not Have Standing to Seek Injunctive Relief

Plaintiff seeks an injunction directing WFM Group to correct its practices and refrain from using certain representations in 365 Graham Crackers.  (FAC at p. 20 [Prayer] ¶¶2, 3.) "[W]hen seeking prospective injunctive relief, the plaintiff must prove the likelihood of future or continuing harm." (citations omitted.)  *Elkind*, 2015 WL 2344134, at *3.  "A plaintiff 'lack[s] standing to pursue injunctive relief [if he is] unable to establish a 'real or immediate threat' of injury.' '[P]ast injuries ... [therefore] do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that [ ]he is likely to be harmed again in the future in a similar way.'" (Citations omitted.) *Kommer v Bayer Consumer Health, a division of Bayer AG*, 710 Fed. Appx. 43, 44 (2d Cir 2018.)  Past purchasers of allegedly deceptive products are not likely to suffer future harm.  As the court in *Berni v Barilla S.p.A* explained:

> For several reasons, past purchasers of a product, like the Barilla purchasers, are not likely to encounter future harm of the kind that makes injunctive relief appropriate.  In the first place, past purchasers are not bound to purchase a product again—meaning that once they become aware they have been deceived, that will often be the last time they will buy that item.  Past purchasers do not have the sort of perpetual relationship with the producer of a consumer good that is typical of plaintiffs and defendants in Rule 23(b)(2) class actions.  No matter how ubiquitous Barilla pasta may be, there is no reason to believe that all, or even most, of the class members—having suffered the harm alleged—will choose to buy it in the future.
>
> But even if they do purchase it again, there is no reason to believe that all, or even most, of the class members will incur a harm anew. Supposing that they have been deceived by the product's packaging once, they will not again be under the illusion that the boxes of the newer pastas are filled in the same way as the boxes of the older pastas.  Instead, next time they buy one of the newer pastas, they will be doing so with exactly the level of information that they claim they were owed from the beginning.  A "fill-line"

-19-

or some disclaimer language will not materially improve their
position as knowledgeable consumers.

*Berni v Barilla S.p.A.,* 964 F.3d 141, 147-48 (2d Cir 2020).

Plaintiff alleges that she "would not have purchased the product in the absence of
Defendant's misrepresentations and omissions." (FAC ¶91.) And, that she will only purchase
the product again when "with the assurance that [sic] Product's label is lawful and consistent
with the Product's ingredients." (FAC ¶ 95.) Because Plaintiff admits that she is unlikely to
purchase the product again, unless the product is changed, she lacks standing to seek injunctive
relief. *See Sharpe v A&W Concentrate Co.*, No. 19-cv-768-BMC, 2020 WL 4931045, at *4
(E.D.N.Y. Aug. 24, 2020).

## IV.   CONCLUSION

For the reasons stated herein, WFM GROUP asks that this Court dismiss Plaintiff's entire
FAC with prejudice.

Dated:  September 8, 2020                   Respectfully submitted,


                                           */s/ Brian R. Blackman*
                                           Brian R. Blackman (admitted *pro hac vice*)
                                           David P. Adams (admitted *pro hac vice*)
                                           Blaxter | Blackman LLP
                                           601 California Street, Suite 1505
                                           San Francisco, California 94108
                                           Telephone: (415) 500-7700
                                           Email: bblackman@blaxterlaw.com
                                                     dadams@blaxterlaw.com

                                           *Attorney for Defendant Whole Foods Market
                                           Group, Inc*