```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/2/21
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CHANDRA CAMPBELL, *individually and on behalf of* :
*all others similarly situated,*                     :
                                                     :
                                    Plaintiff,       :          1:20-cv-01291-GHW
                                                     :
                    -against-                        :          MEMORANDUM OPINION
                                                     :              AND ORDER
WHOLE FOODS MARKET GROUP, INC.,                      :
                                                     :
                                    Defendant.       :
------------------------------------------------------------------X

        Plaintiff Chandra Campbell bought a box of honey graham crackers at Whole Foods.  Ms.

Campbell knew something that some customers buying graham crackers may not—"graham" refers

to a type of whole-wheat flour.  So when she saw a box at Whole Foods touting "Honey Graham

Crackers," she understood that the crackers were made mostly of healthy whole-wheat flour, rather

than regular white or "refined" flour.  And she thought that they were sweetened predominantly

with wholesome natural honey, rather than sugar or some other sweetener.  But they are not.  Ms.

Campbell alleges that she was deceived by the product's packaging (notwithstanding the fact that the

ingredient label accurately described the crackers' content).  She brings this lawsuit as a result.

        Because Plaintiff has plausibly alleged that the references to "honey" and "graham" on the

product's packaging are likely to lead a reasonable consumer to wrongly believe that these graham

crackers contain more whole-grain flour than non-whole grain flour, and that honey is their

predominant sweetener, Plaintiff's consumer protection claims under Sections 349 and 350 of the

New York General Business Obligation Law are adequately pleaded.  However, Plaintiff's auxiliary

tort and warranty claims fail.  As a result, Defendant's motion to dismiss is GRANTED in part and

DENIED in part.

## I.   BACKGROUND

### a.  Facts[1]

Whole Foods "manufactures, distributes, markets, labels and sells graham crackers . . . ." FAC ¶ 1.  The packaging for the product describes the product in a number of ways that Plaintiff alleges to be deceptive.  *Id.*  "The relevant front and identical back representations include 'Honey Graham Crackers,' 'Organic,' golden brown crackers and a honey dipper resting in a bowl of honey."  *Id.* ¶ 3.  Plaintiff alleges that these representations on the packaging lead a reasonable consumer to believe that the graham crackers are "sweetened primarily with honey"—as opposed to sugar or another sweetener—and that the crackers contain predominantly whole-grain flour, as opposed to regular "white" or "refined" flour.  *Id.* ¶¶ 1, 4.

To understand these allegations, one must examine the packaging for the product.  The front of the graham cracker box is pictured below.



*Id.* ¶ 3.  As shown here, the package contains the word "Honey" above the word "Graham."  Each word is written in large orange letters in the same font type and size.  The word "crackers," appears below.  That word is written in a deep red, in a smaller font size, and in a very different type face than the words that precede it.  Visually, the word "crackers" is treated differently from the words "Honey" and "Graham."  These decisions in the graphic design of the packaging make a difference in the Court's analysis:  the words "Honey" and "Graham" are graphically equivalent; the word "crackers" is visually distinct from the words preceding it, and subordinate.

The packaging depicts "golden brown crackers," situated on a white plate, tilted attractively toward the eye of the viewer.  *Id.*  Beside the crackers is a white bowl full of honey.  A honey dipper rises from that bowl.  Its handle extends toward the words describing the product.  The comb is partly submerged; what is visible to the viewer is uniformly glossed with golden honey.

To understand the allegations, one must also understand the meaning of the words depicted on the packaging.  The reader knows what "crackers" and "honey" are.  But the reader may not be familiar with the meaning of the word "graham."  "Graham flour" means "whole wheat flour." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/graham%20flour (last visited February 1, 2021).  "Graham" is an adjective meaning "designating or made of whole-wheat flour."  Collins Dictionary, https://www.collinsdictionary.com/us/dictionary/english/ (last visited February 1, 2021); *see also* FAC ¶¶ 39–43.

Thus, as alleged by Plaintiff, "the 'Graham' in 'Honey Graham Crackers' refers to whole grain flour."  FAC ¶ 43.  Plaintiff's understanding is consistent with dictionary definitions of a "graham cracker."  A "graham cracker" can be defined as "a slightly sweet cracker made of whole wheat flour" or "a semisweet cracker, usually rectangular in shape, made chiefly with whole-wheat

3

flour." *Id.* ¶ 40; *see also* Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/graham%20cracker (last visited February 1, 2021).

So according to Plaintiff, a consumer reading the packaging for Defendant's product will understand it to describe two principal ingredients of the crackers:  honey and graham (or, with the definition of graham in mind, honey and whole wheat flour).  Plaintiff alleges that this is misleading because the principal wheat product in the crackers is not whole wheat flour, but rather "enriched flour," or "refined flour."  *FAC* ¶ 43.  And the principal sweetener is not honey, but instead cane sugar.

The box for the product contains an ingredient list.[2]  The complaint reproduces the ingredient list twice.  In the first reproduction of the ingredient list, Plaintiff highlights the fact that there is more cane sugar in the crackers than honey.

INGREDIENTS: ORGANIC WHEAT FLOUR, ORGANIC CANE SUGAR, ORGANIC EXPELLER PRESSED SUNFLOWER SEED OIL, AND/OR ORGANIC EXPELLER EXPRESED SAFFLOWER SEED OIL, AND/OR ORGANIC EXPELLER EXPRESED CANOLA OIL, ORGANIC WHOLE WHEAT FLOUR, ORGANIC HONEY, ORGANIC MOLASSES, CONTAINS LESS THAN 2% OF EACH OF THE FOLLOWING: ORGANIC CANE SYRUP, SEA SALT, BAKING SODA (SODIUM BICARBONATE), AMMONIUM BICARBONATE, SEA SALT, CREAM OF TARTAR.

*Id.* ¶ 30–31.  According to Plaintiff, Defendant's crackers are "sweetened primarily with sugar and contain only miniscule amounts of honey."  *Id.* ¶ 10.  "[T]he maximum amount of honey in the Products would be slightly above 2% . . . ."  *Id.* ¶ 38.

The second image highlights the fact that there is more regular, "refined flour" in Defendant's crackers than whole wheat flour.

---

[2] The complaint does not tell us where the list is located—on the back or side of the box.  But the Court understands that it is visible to a consumer who wishes to buy the product.

**INGREDIENTS:** ORGANIC WHEAT FLOUR, ORGANIC CANE SUGAR, ORGANIC EXPELLER PRESSED SUNFLOWER SEED OIL, AND/OR ORGANIC EXPELLER EXPRESED SAFFLOWER SEED OIL, AND/OR ORGANIC EXPELLER EXPRESED CANOLA OIL, ORGANIC WHOLE WHEAT FLOUR, ORGANIC HONEY, ORGANIC MOLASSES, CONTAINS LESS THAN 2% OF EACH OF THE FOLLOWING: ORGANIC CANE SYRUP, SEA SALT, BAKING SODA (SODIUM BICARBONATE), AMMONIUM BICARBONATE, SEA SALT, CREAM OF TARTAR.

*Id.* ¶ 44. The actual amount of whole grain flour in Defendant's crackers "is no greater than five grams out of the 31 grams in a serving." *Id.* ¶ 45.

According to Plaintiff, consumers care if the products they buy are made from honey, as opposed to cane sugar. The complaint points to studies supporting that conclusion and a "consensus among doctors and nutritionists that '[e]ating too much sugar contributes to numerous health problems . . . .'" *Id.* ¶ 13. As a result of increasing consumer awareness of such risks, "in recent years consumers have shown a distinct preference for products with little or no added sugar." *Id.* ¶ 16. Consumers rate honey as "better for you" than sugar. *Id.* ¶ 21. "Based on the common marketplace perception that honey is healthier and more natural than sugar, consumers place a greater value on products that are sweetened with honey instead of sugar and are willing to pay a higher price for such products." *Id.* ¶ 28.

Some consumers also seek goods made with whole wheat flour rather than refined flour. "Consumer surveys have confirmed that consumers increasingly seek products made with whole grains because they are expected to contain, and do contain, more fiber than refined white flour." *Id.* ¶ 50. According to Plaintiff, the United States Federal Trade Commission has "recognized that '[M]any reasonable consumers will likely understand 'whole grain' [claims] to mean that all, or virtually all, of the food product is whole grain, or that all of the grain ingredients in the product are whole grains.'" *Id.* ¶ 54.

Plaintiff says that she is such a concerned consumer.  She saw a box of "Honey Graham Crackers" at a Whole Foods store in Manhattan.  *Id.* ¶ 88.  She was deceived by the product's packaging.  From the packaging, she expected that the crackers would "have more than 15 percent whole grain content and contain more than 3 percent honey."  *Id.* ¶ 89.  Despite the ingredient label, she believes that the packaging misrepresents the crackers to contain more honey and whole grain flour than sugar and non-whole grain flour.  She would not have bought the product had she not been deceived by its labelling.  She intends to buy the product again when she "can do so with the assurance that Product's label is lawful and consistent with the Product's ingredients."  *Id.* ¶ 95.

### b.  Procedural History

Plaintiff initiated this action on February 13, 2020.  Dkt. No. 1.  She filed an amended complaint (the "First Amended Complaint" or the "FAC") on August 4, 2020.  Dkt. No. 17.  In the First Amended Complaint, Plaintiff asserts claims for violations of Sections 349 and 350 of the New York General Business Law ("GBL"), negligent misrepresentation, breach of express warranty, breach of the implied warranty of merchantability, violation of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, fraud, and unjust enrichment.  Plaintiff also asserts claims on behalf of a putative class of "all purchasers of the Products in New York during the applicable statutes of limitations."  FAC ¶ 96.  In addition to damages, she seeks injunctive relief.  *Id.* at 20.

Defendant moved to dismiss the First Amended Complaint in its entirety on September 8, 2020.  Dkt. No. 22.  Plaintiff filed her opposition on September 29, 2020.  Dkt. No. 24 ("Opp.").  Defendant filed its reply on October 6, 2020.  Dkt. No. 25 ("Reply").

## II.   STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, a defendant may move to dismiss a plaintiff's

claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In

deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded factual

allegations and draws all inferences in the plaintiff's favor.  *See Palin v. N.Y. Times Co.*, 940 F.3d 804,

809–10 (2d Cir. 2019) (quoting *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017)); *Chase Grp.*

*All. LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010).  –

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  A claim is facially plausible when a plaintiff "pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing

*Twombly*, 550 U.S. at 556).  "The choice between two plausible inferences that may be drawn from

factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." *Lynch v. City*

*of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (quoting *Anderson News, L.L.C. v. Am. Media, Inc.,* 680

F.3d 162, 185 (2d Cir. 2012)).  "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's

disbelief of a complaint's factual allegations." *Id.* (quoting *Twombly*, 550 U.S. at 556).  "[A] well-

pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is

improbable . . . ." *Twombly*, 550 U.S. at 556.

"To survive dismissal, the plaintiff must provide the grounds upon which his claim rests

through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI*

*Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation

of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III.   ANALYSIS

#### a.   Plaintiff Has Adequately Pleaded a Violation of New York General Business Law §§ 349 and 350

Plaintiff has adequately pleaded a violation of §§ 349 and 350 of the GBL because a reasonable consumer could understand the references to "Honey" and "Graham" on the product's packaging to be statements regarding the predominant ingredients in the crackers, as Plaintiff did here. GBL Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service," while GBL Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service." To successfully assert a claim under either section of the statute, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). "Claims under GBL §§ 349 and 350 are not required to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b) . . . ." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020).

"To state a claim for false advertising or deceptive business practices under New York . . . law, a plaintiff must plausibly allege that the deceptive conduct was 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)). The test applies an objective standard. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995). "In determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial. We therefore consider the challenged advertisement as a whole,

including disclaimers and qualifying language." *Mantikas*, 910 F.3d at 636 (internal citations and quotation marks omitted).

"[U]nder certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Fink*, 714 F.3d at 742. At the same time, disclosures on the side of a package, such as an ingredient label, or a panel with other facts about the nutritional content of a product, do not necessarily render a plaintiff's allegations of deception implausible. *Mantikas*, 910 F.3d at 636. Indeed, the Second Circuit has held the following:

> "[R]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." "Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that *confirms* other representations on the packaging." We conclude that a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box.

*Id.* (internal citations omitted).

"It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741. However, "this inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage." *Duran*, 450 F. Supp. 3d at 346. Still, "[P]laintiffs must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers. Instead, Plaintiffs must plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 242 (S.D.N.Y. 2020) (internal citation and quotation marks omitted) (quoting *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (summary order)).

Plaintiff has plausibly alleged that the packaging is materially misleading in two ways. First, because, as Plaintiff argues, a reasonable consumer could conclude that it "represents that it is exclusively or predominantly sweetened with honey when, in fact, it is predominantly sweetened

with sugar." Opp. at 2. And second, because a reasonable consumer could conclude that it "represents that it contains more whole grain or graham flour than wheat flour when this is not true." *Id.* These two issues are interrelated, but Court addresses each in turn.[3]

### i. Graham Means Whole Wheat

Plaintiff has plausibly pleaded that the packaging is likely to mislead a reasonable consumer into thinking that the product contains more whole grain—or graham—flour than refined flour. As described above, "Graham" refers to whole wheat flour. A consumer who knows that "graham" refers to "whole wheat" flour is likely to read the product packaging as a description of the crackers' ingredients: honey and graham. Remember how the graphics of the packaging looks? Honey and graham are each equally sized in a uniform color and font, preceding the word "crackers." A reasonable consumer can view each of those items as a description of the ingredients in the crackers described below each of those prominent terms.[4] And that consumer—assuming that she knows what graham means—would read the reference on the packaging to Graham to be a reference to "whole wheat."

As a result, the Second Circuit's ruling in *Mantikas* is directly on point. In *Mantikas*, the Second Circuit held that the statements "WHOLE GRAIN" and "MADE WITH WHOLE GRAIN" in large, bold-faced letters were "misleading because they communicate to the reasonable consumer that the grain in the product is predominantly, if not entirely, *whole* grain." 910 F.3d at 637 (emphasis in original). Like here, the side panel of the box listed "'enriched white flour' as the

---

[3] The First Amended Complaint contains several paragraphs that discuss regulations under the Food, Drug, and Cosmetic Act (the "FDCA"). FAC ¶¶ 65–69. These regulations do not create a private right of action enforceable by Plaintiff. *See PDK Labs Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997) (plaintiff's "dogged insistence that [defendant's] products are sold without proper FDA approval suggests" his goal is "to privately enforce alleged violations of the FDCA . . . . However, no such private right of action exists."). Plaintiff acknowledges in her opposition that she is not bringing a private action for violations of the FDCA. Opp. at 14–15. Plaintiff concedes that she "has not alleged that she was aware of the regulations . . . at the point of purchase." Opp. at 16.

[4] Because "graham" refers to a type of flour, not a flavor, as will be discussed below, a reasonable consumer could also view the reference to honey as a reference to honey as an ingredient.

first (and thus predominant) ingredient." *Id.*  However, the Circuit held that "we cannot conclude that these disclosures on the side of the box render Plaintiffs' allegations of deception implausible" because "[r]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Id.* (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)).

Here, the front label of the product at issue did not say that the crackers were "made with" graham—whole wheat flour.  But the absence of those words is not dispositive.  The Circuit's decision in *Mantikas* did not suggest that it turned on the presence of those words.  More importantly, graham is a kind of flour.  There is no allegation that "graham flour" or "whole wheat flour" are associated with a particular flavor.  So it is reasonable to infer that a reasonable consumer would construe the reference to graham here, like the reference to "whole wheat" in *Mantikas* as something that the crackers are made with—even if the words "made with" do not appear on the packaging.[5]

So, put simply, a reasonable consumer who is aware of the meaning of the word "graham" would read the packaging in essentially the same way as the plaintiffs in *Mantikas*.  She would understand that the packaging represents that the product is made from "whole grain."  Just as in *Mantikas*, a reasonable customer could find the packaging of the Product be misleading because the packaging would "communicate to the reasonable consumer that the grain in the product is predominantly, if not entirely, *whole* grain." *Mantikas*, 910 F.3d at 637.  This is true regardless of the fact that the consumer could determine from the ingredient label that refined flour was the principal

---

[5]  The absence or presence of the words "made with" can make a substantial difference where the relevant term is both an ingredient and a flavor.  "Made with" designates a product as an ingredient.  But, in the case of a base ingredient, such as flour, which is not alleged to have a distinctive flavor that can be created by something other than the ingredient itself, the phrase "made with" can be redundant.

ingredient.  Because the crackers are not predominantly made from whole grain, Plaintiff has

plausibly alleged that the packaging is misleading.[6]

The Court recognizes that Magistrate Judge Bulsara reached a different conclusion in *Kennedy*

*v. Mondelez Glob. LLC,* No. 19-cv-302 (ENV)(SJB), 2020 WL 4006197 (E.D.N.Y. July 10, 2020).

Judge Bulsara recommended dismissing a similar claim because he did not find that labelling

products "grahams" or "graham crackers" misleadingly implied that the products contained more

graham or whole wheat flour than white flour.  Judge Bulsara reasoned as follows:

> The word "graham" when included in the term "grahams" or the phrase "graham
> crackers" does not connote graham flour.  A reasonable consumer hearing the term
> "graham," even without the word "cracker," thinks first and foremost of a slightly
> sweet, darker-colored, rectangular, and perforated cracker.  It is a type of cracker that
> is used in desserts like s'mores.  The Court also does not believe a reasonable
> consumer would associate "graham" as meaning "graham flour," and as a result
> assume that graham flour is either the predominant ingredient in the product or that
> graham flour predominates over other types of flour.

*Id.* at *1.

The Court understands the motivating force behind this decision:  when reading the phrase

"graham cracker," this Court too does not think of whole wheat flour—or, frankly, anything

particularly healthy.  In fact, before reading the complaint in this case, this judge did not know that

the "graham" in graham cracker referred to a type of flour:  the crackers might have been named

after a famous person named Graham, in the way that Peach Melba and Melba Toast were named

after an opera singer.

But in evaluating the allegations here, the Court cannot assume that consumers will be

equally ignorant of the clear-cut meaning of the term "graham."  Plaintiff alleges that she was not;

---

[6] That a reasonable consumer might be led to believe that the Product was made predominantly with wheat flour is
confirmed by the dictionary definitions of "graham cracker."  As alleged by Plaintiff and relied on by Defendant in its
memorandum of law, there are multiple dictionary definitions of "graham cracker."  A "graham cracker" can be defined
as "a slightly sweet cracker made of whole wheat flour" or "a semisweet cracker, usually rectangular in shape, made
chiefly with whole-wheat flour."  AC ¶ 40.   Both definitions refer to whole wheat flour.

she read the box understanding it to refer to the whole wheat content of the crackers.  It is important to remember that "at least in some cases, 'a federal trial judge, with a background and experience unlike that of most consumers, is hardly in a position to declare' that reasonable consumers would not be misled."  *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-cv-3826 (MKB), 2015 WL 5579872, at *20 (E.D.N.Y. Sept. 22, 2015) (quoting *Verizon Directories Corp. v. Yellow Book USA, Inc.,* 309 F.Supp.2d 401, 407 (E.D.N.Y. 2004) (noting that resolution of the issue may require "surveys, expert testimony, and other evidence of what is happening in the real world")).  And "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."  *Lynch*, 952 F.3d at 75 (quoting *Twombly*, 550 U.S. at 556).  In the context of this motion, the Court cannot conclude that Plaintiff has failed to plead that a reasonable consumer is likely to be misled by the use of "graham" on the packaging for this product.[7]  It is not implausible that

---

[7] *Kennedy* also rests its decision on an evaluation of the dictionary definition of the phrase "graham cracker."
   Plaintiffs' arguments, attempting to establish an association between graham crackers and graham flour, are without merit.  Plaintiffs point to dictionary definitions to demonstrate what a reasonable consumer believes when he or she reads "graham cracker":  "a slightly sweet cracker made of whole wheat flour," Merriam-Webster's definition; or "a semisweet cracker, usually rectangular in shape, made chiefly of whole-wheat flour," a definition used by an online dictionary (Am. Compl. ¶ 26) (citing Graham Cracker, Dictionary.com, https://www.dictionary.com/browse/graham-cracker (last visited July 8, 2020)).  If the Merriam-Webster definition establishes the meaning of the term "graham cracker," then Mondelez's products are not misleading or deceptive, because they indisputably contain graham flour.  If Plaintiffs' argument is something more—that "graham cracker" suggests a cracker with predominantly graham flour—these authorities undercut such an association.  That is, one definition (Merriam-Webster) defines the cracker without any indication of the quantum of graham flour, whereas the other (Dictionary.com) suggests the product is "chiefly" of graham flour.  Such a variation between ostensibly reasonable definitions suggests that Mondelez's use is necessarily not misleading or deceptive.

*Kennedy*, 2020 WL 4006197, at *10.
   The Court is not persuaded by this analysis for at least three reasons.  First, presented with a dictionary definition of a "graham cracker" as meaning "a slightly sweet cracker made of whole wheat flour," it is difficult to understand how a court could conclude based on its experience alone that a consumer would not understand the term in a way consistent with its definition.  Consumers may not understand the term in a manner consistent with the definition, but a court should be wary of concluding that a word cannot reasonably be understood in a manner consistent with its based on its experiences alone.  Second, the analysis makes much of the "variation between ostensibly reasonable definitions" to conclude that a consumer would not think of a graham cracker as being made of whole wheat.  But in doing so, *Kennedy* makes short shrift of the similarity between the definitions—both define graham crackers as being made out of whole wheat.  The variance between the definitions regarding the quantum of whole grain in such crackers does not seem to support the conclusion that a reasonable consumer would not expect a graham cracker to contain whole wheat, as *Kennedy* ultimately concluded.  Third, the analysis seems to be predicated on the belief that because the product contains some whole wheat flour, the representation cannot be false.  But that position—so long as there is any of the ingredient in the product, the advertisement is not deceptive—is simply not sustainable in this Circuit after

consumers would understand the words on the box to say what they mean.  Evidence, such as a

consumer survey, not merely judicial introspection, is needed to determine what consumers

understand the phrase to mean in the context of this particular product and its packaging.[8]

### ii. Honey Is Alleged to be an Ingredient

Plaintiff has also adequately alleged that the packaging is likely to mislead a reasonable

consumer into thinking that the product's primary sweetener is honey.  The first question is whether

a reasonable consumer would view the reference on the box to "honey" as a reference to the

product's flavor, rather than as an ingredient.  For a number of reasons, the Court believes that a

reasonable consumer would view the reference to honey on this product's packaging to be a

reference to honey as an ingredient in the product.

First, the design of the packaging suggests that honey is an ingredient.  The graphics of the

packaging treat the words "graham" and "honey" as equivalents.  The word "honey" is written

directly above the word "graham" in the same size, font, and color, putting the words in visual parity

with each other.  As discussed above, "graham" refers to an ingredient.  Given the graphical

equivalence of "honey" and "graham" on the packaging, the Court cannot conclude that "honey"

does not also refer to an ingredient.  The front of the box also features a honey dipper resting in a

bowl of honey, which suggests that the crackers contain honey as an ingredient.

---

*Mantikas. See Mantikas*, 910 F.3d at 638 ("the rule that Defendant contends emerges from these district court decisions—that, as a matter of law, it is not misleading to state that a product is made with a specified ingredient if that ingredient is in fact present—would validate highly deceptive advertising and labeling.  Such a rule would permit Defendant to lead consumers to believe its Cheez-Its were made of whole grain so long as the crackers contained an iota of whole grain, along with 99.999% white flour.  Such a rule would validate highly deceptive marketing.").

[8] The Court emphasizes that this is a fact-specific analysis based on the packaging at issue in this case; it is not a conclusion that any reference to graham for similar products must be construed as a reference to an ingredient.  The Court in *Kennedy* was presented with different packaging and different statements.  For example, this Court too might have a different view of a representation that similar crackers were "Grahams" as in *Kennedy*—arguably referring to a category of cracker or cookie—as opposed to an ingredient in the crackers, as in the "Honey Graham Crackers" depicted on the packaging of this product.

Second, honey is both a flavor and a sweetening ingredient.  So even if "honey" were intended solely as a reference to the flavor of the Product, a reasonable consumer could expect that the source of the honey flavor was actual honey—an ingredient.  Unlike in the manifold cases evaluating descriptions of "vanilla" products, there is no basis in the complaint for the Court to conclude that the flavor of honey can come from a product other than honey.  *Compare Sharpe v. A&W Concentrate Co.*, No. 19-cv-768 (BMC), 2020 WL 4931045, at *4–5 (E.D.N.Y. Aug. 24, 2020) (describing ethyl vanillin as a substitute source of vanilla flavoring).  Therefore, a reasonable consumer could see the image of, and reference to, "honey" in the packaging for these crackers as a representation that honey is used as an ingredient in the product.  *See Kennedy,* 2020 WL 4006197 at *12–13 (treating the statements "made with real honey," "Honey Maid" and "no high fructose corn syrup," along with images of a bee and a dipper, as ingredient representations about honey as a sweetener).

Again, in light of the Circuit's decision in *Mantikas*, the Court cannot conclude that a reasonable consumer is unlikely to be misled by the packaging's reference to honey—and to believe, as Plaintiff did here, that the predominant sweetener in the product was honey.  That representation is adequately pleaded to have been misleading because it falsely implies that honey is the primary sweetener in the product, when it is not.  As in *Mantikas*, the packaging's prominent use of "honey" and honey imagery can be understood by a reasonable consumer to imply that honey is the primary sweetener.  In the same way that the references to "whole wheat" on the box at issue in *Mantikas* could be read to imply that the predominant flour was whole wheat, notwithstanding the product's ingredient list, the references to "honey" on this product's box can be read to suggest that honey is the predominant sweetener.

Again, the Court does not find the contrary arguments made by Defendant in reliance on the decision in *Kennedy* to be persuasive.  The Court in *Kennedy* accepted that the references to honey on

the product packaging at issue in that case were references to honey as an ingredient in the product. But *Kennedy* concluded that the references to honey in that case could not be misleading.  This is the *Kennedy* court's analysis of the issue:

> As for the inference about predominance—that honey predominates over other sweeteners—again *Mantikas* does not assist these Plaintiffs.  In holding that the representations about the amount of whole grains in the products were misleading, the Court of Appeals distinguished cases cited by the defendant that "alleged they were misled about the quantity of an ingredient *that obviously was not the products' primary ingredient*."  910 F.3d at 638 (emphasis added).  So while "reasonable consumers are likely to understand that crackers are typically made predominantly of grain, . . . [t]hat same consumer, confronted with the claim that a cracker is 'made with real vegetables,'" for example, "likely would not likely conclude that the cracker was made predominantly of vegetables."  *Id.*

> Likewise, a reasonable consumer could not be misled into thinking that "made with honey" means the grahams contain more honey than sugar, because honey is not the primary ingredient in grahams.  The representations related to honey fall well within the consistent line of cases that hold similar representations about non-dominant ingredients are non-deceiving, including those cited by Mantikas.  *See Mantikas*, 910 F.3d at 638 (collecting cases); *e.g.*, *Red v. Kraft Foods, Inc.*, No. 10-cv-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) ("Plaintiffs' theory of the case is that the packaging suggests the product is *healthy* and contains a *significant amount* of vegetables, because the packaging boasts that the crackers are made with real vegetables and depicts vegetables.  The fact remains that the product is a box of crackers, and a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables." (quotations and citation omitted)).

*Kennedy*, 2020 WL 4006197, at *13.

*Kennedy*'s holding appears to rely on an understanding that consumers can only be misled by a representation regarding the product's "primary ingredient"—the first ingredient on the ingredient list.  Since wheat, not honey was the product's "primary ingredient," *Kennedy* reasons, a consumer could not be misled by a representation on the packaging about the product's content of honey.

As Judge Cogan, also of the Eastern District of New York, has written, this limited application of *Mantikas* makes little sense.  "Narrowly construing *Mantikas* to apply only in cases in which a product's primary ingredient is at issue makes little sense and would encourage highly deceptive marketing.  There are many scenarios in which a consumer's 'preferred' or 'desired'

16

ingredient may not necessarily be the product's main or predominant ingredient.  A chocolate chip cookie may not necessarily be comprised predominantly of chocolate (one can only dream), but it would still likely be misleading to label it as 'Made With Natural Chocolate' if the cookie's chocolate's content is 99.999% artificial and synthetic."  *Sharpe*, 2020 WL 4931045, at *7.

And, as the Court in *Sharpe* has pointed out, *Kennedy*'s holding that a consumer can only be misled regarding a product's "primary ingredient" is not supported by an analysis of *Mantikas*, or the cases upon which it relied.  *Id.* at *6 ("I cannot disregard the Circuit's rejection of this argument and therefore conclude that the principle resulting from *Mantikas* may also apply in circumstances in which the alleged misrepresentation pertains to a preferred, non-primary ingredient.  Other district courts in this Circuit have declined to confine the application of *Mantikas* to only instances in which the representation relates to a product's primary or main ingredient.") (collecting cases); *see also Izquierdo v. Panera Bread Co.*, No. 18-cv-12127 (VSB), 2020 WL 1503557, at *6 (S.D.N.Y. March 30, 2020) (holding labeling was misleading where imitation blueberries predominated over real blueberries in a "Blueberry Bagel").  The Court finds Judge Cogan's analysis of this issue in *Sharpe* to be persuasive.  It is also noteworthy that while Defendant points to *Kennedy* in support of its position, Defendant does not rely on the argument that honey is not the product's "primary ingredient."

Instead, Defendant relies on another argument embraced by the court in *Kennedy*—namely that so long as there is any honey in the product, the references in the packaging cannot be deceptive.  Opp. at 10 (arguing that the references to honey cannot be deceptive because "as Plaintiff acknowledges, the product is in fact sweetened with honey.") (citing to *Kennedy*, 2020 WL 4006197, at *12 ("Sweetening grahams with honey does not foreclose the use of other sweeteners or make the representation deceptive.")).  However, this argument was roundly rejected by the Circuit in *Mantikas*—"the rule that Defendant contends emerges from these district court decisions—that,

as a matter of law, it is not misleading to state that a product is made with a specified ingredient if that ingredient is in fact present—would validate highly deceptive advertising and labeling. Such a rule would permit Defendant to lead consumers to believe its Cheez-Its were made of whole grain so long as the crackers contained an iota of whole grain, along with 99.999% white flour. Such a rule would validate highly deceptive marketing." *Mantikas*, 910 F.3d at 638. Applying this precedent, the Court cannot conclude that references to honey on the packaging of this product cannot be deceptive as a matter of law because the product includes some honey. *Kennedy* is not controlling, and does not provide persuasive authority to deviate from clearly established precedent.

Defendant also points to *Sarr v. BEF Foods, Inc.*, No. 18-cv-6409 (ARR)(RLM), 2020 WL 729883, at *5 (E.D.N.Y. Feb. 13, 2020), to support its argument that the packaging is not misleading because the Product is in fact sweetened with honey. Defendant observes that *Sarr* held that use of phrase "Made with Real Butter" is not likely to mislead reasonable consumers despite product's use of margarine as ingredient. But in *Sarr* "the plaintiffs concede[d] that the Mashed Potatoes' predominant fat ingredient is the one emphasized in the defendant's labeling—butter." *Id.* at *4. In other words, the featured ingredient in *Sarr*—butter—was the product's predominant source of fat. So the label was not misleading. This case is distinguishable because the featured ingredient— honey—is not the primary sweetener. The Court cannot conclude as a matter of law that no reasonable consumer would be misled by Defendant's labeling of this product.

### iii.   Injury Is Adequately Pleaded

Plaintiff has adequately pleaded that she suffered an injury, as is required to state a claim under Sections 349 and 350 of the GBL. To demonstrate injury under the statute, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander*, 802 F.3d at 302. One way to do so is to allege that the plaintiff "would not have purchased the product or been willing to pay as much had they known

the true facts." *Pichardo v. Only What You Need, Inc.*, No. 20-cv-493 (VEC), 2020 WL 6323775, at *6 (S.D.N.Y. Oct. 27, 2020) ("Plaintiffs have alleged that they would not have purchased the product or been willing to pay as much had they known the true facts, namely that the vanilla taste did not derive 100% from vanilla extract.  This is sufficient to meet their burden of alleging injury as a result of alleged misrepresentation.").  Here, Plaintiff alleges that exactly that.  *See* FAC ¶¶ 73–74 ("The value of the Product that [P]laintiff purchased and consumed was materially less than its value as represented by defendant.  Had [P]laintiff and class members known the truth, they would not have bought the Products or would have paid less for it.").  Defendant argues that Plaintiff's allegations regarding a price premium are conclusory because she does not allege the price of any comparable products.  Memorandum of Law in Support of Defendant's Motion to Dismiss ("MOL"), Dkt. No. 23, at 11.  However, "while identifying the prices of competing products in the Complaint would strengthen Plaintiff's allegation of injury, the failure to do so is not fatal to Plaintiff's claim." *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 480–82 (S.D.N.Y. 2014). Therefore, Plaintiff has adequately pleaded that she suffered an injury.

### b.  Negligent Misrepresentation

Plaintiff's negligent misrepresentation claim is dismissed because Plaintiff has failed to allege the existence of a special relationship giving rise to a duty to speak on the part of Defendant.  "To state a claim for negligent misrepresentation under New York law, the plaintiff must allege that '(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.'" *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012) (quoting *Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000)).

"Under the 'duty' element, 'New York strictly limits negligent misrepresentation claims to situations involving 'actual privity of contract between the parties or a relationship so close as to approach that of privity.'" *Id.* (quoting *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 271 (2d Cir.1993)). "In the commercial context, a closer degree of trust between the parties than that of the ordinary buyer and seller is required to establish the 'existence of . . . a special relationship . . . [capable of] giv[ing] rise to an exceptional duty regarding commercial speech and justifiable reliance on such speech.'" *Izquierdo v. Mondelez Int'l, Inc.,* No. 16-cv-04697 (CM), 2016 WL 6459832, at *8 (S.D.N.Y. Oct. 26, 2016) (quoting *Kimmell v. Schaefer,* 89 N.Y.2d 257, 264 (1996)) (alterations in original). "*Kimmell* directs courts to examine the following factors to determine whether a special relationship, and a duty to provide correct information, exists: 'whether the person making the representation held or appeared to hold unique or special expertise, whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose.'" *Id.* (quoting *Kimmell*, 89 N.Y.2d at 264).

Applying the *Kimmel* factors, the relationship between Defendant, as the manufacturer and seller, and Plaintiff as the buyer, does not rise to the level of the kind of special relationship— approaching that of privity—that would impose a duty to speak on Defendant. "'[N]ot all representations made by a seller of goods . . . will give rise to a duty to speak with care.' Instead, the law of negligent misrepresentation requires a closer degree of trust between the parties than that of the ordinary buyer and seller in order to find reliance on such statements justified." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003) (quoting *Kimmell*, 89 N.Y.2d at 263).

Here, the well-pleaded allegations in the First Amended Complaint describe a relationship between Plaintiff and Defendant which is that of an ordinary buyer and seller. Plaintiff purchased the product in November 2019 at a Whole Foods store in New York City. FAC ¶ 88. The parties

are not alleged to have had any other relationship.[9]  The parties are alleged to have engaged in a

basic commercial transaction, which does not give rise to the kind of special relationship necessary

to maintain a claim for negligent misrepresentation. [10]  *Izquierdo*, 2016 WL 6459832, at *8 (dismissing

negligent misrepresentation claim based on allegedly misleading candy packaging because "[n]othing

in the complaint suggests that the transaction differs in any way from the numerous cases in this

District and Circuit in which courts have held that a basic commercial transaction does not give rise

to a special relationship."); *see Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029 (NSR), 2015 WL

2168374, at *14 (S.D.N.Y. May 7, 2015) (dismissing New York law negligent misrepresentation

claim alleging defendant's products were misleadingly labeled as organic, natural, or all natural for

"failure to plead any cognizable special relationship" with the defendant, reasoning that

"[d]efendant's obligation to label products truthfully does not arise from any special relationship.

There is nothing approximating privity between the parties."); *Stoltz*, 2015 WL 5579872, at *25

(finding no special relationship despite the allegation that "[a]s the sole manufacturer of their

products, Defendants are in the unique position of being able to provide accurate information about

their products" because "[t]he requisite special relationship may not . . . be based solely on

Defendants' status as the manufacturer of the [products] because, if this alone were sufficient, a

---

[9] The Court disregards the conclusory allegations in the complaint that the "duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type."  FAC ¶ 114.  This is a mere "formulaic recitation of the elements of a cause of action," and, thus, "will not do."  *Twombly*, 550 U.S. at 555.

[10] Plaintiff argues that she need not establish a special relationship because she has "emphatically" alleged two of the three factors enumerated by the Court of Appeals in *Kimmel*.  Opp. at 19.  However, the *Kimmel* standard is not satisfied here.  True, the Second Circuit has held "that a 'sparsely pled' special relationship of trust or confidence is not fatal to a claim for negligent misrepresentation where 'the complaint emphatically alleges the other two factors enunciated in *Kimmell.'" *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004) (quoting *Suez Equity Inv'rs, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001)).  But here, a special relationship of trust and confidence is not sparsely pled—it is not pled at all.  *Cf Suez*, 250 F.3d at 103 (noting that "plaintiff's complaint implies a relationship between the parties that extended beyond the typical arm's length business transaction").  Moreover, Plaintiff only conclusorily alleged that Defendant had a duty because it "held itself out as having special knowledge and experience in the production, service and/or sale of the product."  FAC ¶ 114.  The Court need not credit that allegation.  *Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555).

special relationship would necessarily always exist for purposes of misbranded food claims, which is not the case").  Because the relationship between Plaintiff and Defendant was not so close as to approach that of privity, Plaintiff has not adequately pleaded that Defendant had a duty to provide information to Plaintiff.  As a result, Defendant's motion to dismiss Plaintiff's negligent misrepresentation claim is granted.[11]

### c.  Fraud

Plaintiff's fraud claim is dismissed because she has failed to plead fraudulent intent.  "To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."  *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402–03 (2d Cir. 2015). "A claim for common law fraud is subject to the particularity requirements of Federal Rule of Civil Procedure 9(b)."  *Id.* at 402–03.  Rule 9(b) requires that the complaint "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  To satisfy that requirement, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (citing *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000)).  Plaintiff's only allegation about Defendant's intent is that "Defendant's fraudulent intent is evinced by its failure to accurately identify the Products on the front label when it knew this was not true."  FAC ¶128.  That allegation on its own is insufficient

---

[11] Defendant also argues that the negligent misrepresentation claim is barred by the economic loss rule, which Plaintiff does not address.  "A limited exception to New York's barrier against recovery of economic loss exists, however, for claims of negligent misrepresentation."  *Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of New York*, 734 F. Supp. 2d 368, 379–80 (S.D.N.Y. 2010).  Nevertheless, "before a party may recover in tort for pecuniary loss sustained as a result of another's negligent misrepresentations there must be a showing that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity."  *Id.* at 379–80.  *Parrott v. Coopers & Lybrand, L.L.P.*, 95 N.Y.2d 479, 483 (2000)).  As explained above, here there has been no such showing.

because "[t]he simple knowledge that a statement is false is not sufficient to establish fraudulent intent, nor is a defendants' 'generalized motive to satisfy consumers' desires [or] increase sales and profits.'" *Davis v. Hain Celestial Grp.*, 297 F. Supp.3d 327, 337 (E.D.N.Y. 2018.) (quoting *In re Frito–Lay N. Am., Inc. All Nat. Litig.*, No. 12-md-2413, 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013)). Plaintiff does not argue otherwise. Moreover, while the existence of accurate information regarding the product's ingredients on the package does not stymie a deceptive labelling claim as a matter of law, it is certainly a substantial barrier to a plaintiff seeking to plead a claim of fraud. Accordingly, Defendant's motion to dismiss Plaintiff's fraud claim is granted.

### d. Breach of Express Warranty

Defendant's motion to dismiss Plaintiff's breach of express warranty claim is granted because Plaintiff has not adequately pleaded that she provided notice of the alleged breach. "In order to assert a breach of express warranty claim under New York law, 'a buyer must provide the seller with timely notice of the alleged breach of warranty.'"[12] *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 244–45 (S.D.N.Y. 2020) (quoting *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013)); *see also* N.Y. U.C.C. § 2-607(3)(a) ("the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy"). With respect to notice, Plaintiff alleges only that "Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees." FAC ¶ 122. That allegation is insufficient to show that the buyer provided timely notice of the alleged breach—the statement is wholly equivocal. It does not allege that notice has been provided, only that

---

[12] "Although a minority of New York State cases suggest an exception to the notice requirement in retail sales, the court declines to impose this exception in the instant action, particularly given that the exception appears to be exclusively applied where a party alleges physical, in addition to economic, injury." *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143–44 (E.D.N.Y. 2018); *see also Lugones*, 440 F. Supp. 3d at 245 (following *Colella* and finding the exception "inapplicable where, as here, Plaintiffs have not alleged any physical or personal injury as a result of Defendant's alleged breach"). Here, too, Plaintiff has not alleged any physical or personal injury, so the exception is inapplicable.

Plaintiff "provided or will provide" notice.[13]  If Plaintiff had provided notice, she could have written that, rather than pleading, in essence, both that she did provide notice, and that she did not do so but will do so in the future.  Plaintiff has not adequately pleaded that she in fact provided notice.  Therefore, Plaintiff's breach of express warranty claim is dismissed.[14]  *See Lugones*, 440 F. Supp. 3d at 245 (finding that "Plaintiffs must allege some form of timely, pre-litigation notice" and dismissing breach of express warranty claim for failure to provide timely notice); *Colella*, 348 F. Supp. 3d at 143–44 (dismissing express warranty claim where the complaining "ma[de] no allegations and state[d] no facts showing that notice was provided to defendant"); *Quinn*, 958 F. Supp. 2d at 544 (dismissing breach of warranty claim for failure to allege timely notice).

### e.  Breach of Implied Warranty of Merchantability

Plaintiff's claim asserting a breach of the implied warranty of merchantability is also dismissed for failure to allege she gave Defendant notice of breach.  The U.C.C.'s notice requirement also applies to claims for breach of implied warranty.  *See, e.g., Int'l Bhd. of Teamsters Local 456 Health & Welfare Tr. Fund v. Quest Diagnostics Inc.*, No. 10-cv-1692 (RJD), 2012 WL 13202126, at *23 (E.D.N.Y. Apr. 19, 2012) (dismissing express and implied warranty claims for failure to plead that defendants were given timely notification of breach); *Hubbard v. Gen. Motors Corp.*, No. 95-cv-4362, 1996 WL 274018, at *4 (S.D.N.Y. May 22, 1996) (dismissing express and implied warranty claims under Section 2-607(3) of the New York Uniform Commercial Code because the complaint "lacks any allegation that plaintiff notified [the defendant]").  Therefore, Plaintiff's implied warranty of merchantability claim is also dismissed.[15]

---

[13] Plaintiff also alleged that "Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years."  FAC ¶ 123.  This allegation does not suggest that the buyer provided timely notice, as required.

[14] Plaintiff's opposition is entirely silent on the issue of notice.  Opp. at 19–20.

[15] As noted above, *supra* n.13, Plaintiff failed to address the notice issue.  Instead, the parties focused their arguments regarding Plaintiff's implied warranty claim on whether Plaintiff's failure to allege that the Product was unfit for human consumption required its dismissal.  "The implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection."

### f.  Magnuson Moss Warranty Act

Defendant's motion to dismiss Plaintiff's claim under the Magnuson-Moss Warranty Act (the "MMWA") is granted because Plaintiff does not plead the existence of a written warranty. First, Plaintiff has abandoned this claim by failing to brief the issue in response to Defendant's motion to dismiss.  *See, e.g., Johnson v. City of New York*, No. 1:15-cv-8195 (GHW), 2017 WL 2312924, at *17 (S.D.N.Y. May 26, 2017) ("By failing to address Defendants' arguments in support of dismissing this claim, it is deemed withdrawn or dismissed as abandoned."); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-cv-442 (TPG)(FM), 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim.").

---

*Mongiello's Italian Cheese Specialties, Inc. v. Euro Foods Inc.*, No. 14-cv-2902 (DF), 2018 WL 4278284, at *37 (S.D.N.Y. Mar. 30, 2018) (quoting *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 433 (2d Cir. 2013)).  "A warranty of merchantability, however, does not mean that the product will fulfill a buyer's every expectation but rather simply provides for a minimum level of quality.  *Ackerman v. Coca-Cola Co.*, No. 09-cv-0395 (JG)(RML), 2010 WL 2925955, at *25 (E.D.N.Y. July 21, 2010) (quoting *Viscusi v. Proctor & Gamble*, No. 05-cv-01528 (DLI)(LB), 2007 WL 2071546, at *13 (E.D.N.Y. July 16, 2007)) (internal quotation marks omitted).  "Where the sale of a food or beverage is concerned, courts have ruled that the product need only be fit for human consumption to be of merchantable quality."  *Marotto v. Kellogg Co.*, No. 18-cv-3545 (AKH), 2018 WL 10667923, at *8 (S.D.N.Y. Nov. 29, 2018); (quoting *Silva v. Smucker Nat. Foods, Inc.*, No. 14-cv-6154 (JG)(RML), 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015)).

Plaintiff seems to concede that she must meet this pleading standard to adequately plead a cause of action under N.Y. U.C.C. § 2-314(c).  But she asserts that the Court must separately analyze whether the product is not "capable of passing without objection in the trade under the contract description," as provided in N.Y. U.C.C. § 2-314(a), because the packaging is misleading.  Opp. at 20–21.  But that provision of N.Y. U.C.C. § 2-314(a) is "more or less a synonym of 'fit for ordinary purposes.'"  1 White, Summers, & Hillman, Uniform Commercial Code § 10:31 (6th ed.) ("Although more or less a synonym of 'fit for ordinary purposes,' the 'pass without objection' phrase focuses more clearly on trade usage, similar goods, and the seller's conduct.").  And the comments to the U.C.C. make it clear that whether a good is capable of passing without objection in the trade under the contract description is fundamentally a question about whether it is of an acceptable level of quality.  *See* N.Y. U.C.C. § 2-314, cmt. 2, 7.  Thus, even where plaintiffs have alleged misleading food and beverage packaging, courts dismiss implied warranty of merchantability claims for failure to allege that the product was unfit for human consumption.  *Marotto*, 2018 WL 10667923, at *8; *Silva*, 2015 WL 5360022, at *11; *Atik v. Welch Foods, Inc.*, No. 15-cv-5405 (MKB)(VMS), 2016 WL 11480151, at *13 (E.D.N.Y. Aug. 5, 2016), *report and recommendation adopted*, No. 15-cv-5405 (MKB)(VMS), 2016 WL 5678474 (E.D.N.Y. Sept. 30, 2016); see also *Donahue v. Ferolito, Vultaggio & Sons*, 786 N.Y.S.2d 153, 154–55 (1st Dep't 2004) (where allegedly deceptive beverage labels "purportedly promised that consumption of the product would improve memory, reduce stress and improve overall health," holding that "[t]he claim for breach of implied warranty was also properly dismissed on the ground that these merchantable beverages caused no ill effects and were fit for their intended purpose, namely, liquid refreshment.").  Because of Plaintiff's failure to adequately plead notice, the Court does not reach this issue.

Moreover, Plaintiff has not alleged the existence of a written warranty within the meaning of the MMWA.  "The MMWA grants relief to a consumer 'who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty.'"  *Wilbur v. Toyota Motor Sales, U.S.A., Inc.*, 86 F.3d 23, 26 (2d Cir. 1996) (quoting 15 U.S.C. § 2310(d)(1)) (alterations in original).  Under the MMWA, a "written warranty" is defined in relevant part as follows:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship *and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time.*

15 U.S.C. § 2301(6)(A) (emphasis added).  The references on the packaging to "honey" and "graham" do not suggest that the crackers are defect free or that they will meet a specified level of performance over a specified period of time; instead, they simply describe the product.  *See In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-cv-2413 (RRM)(RLM), 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013) (holding representation that chips were "all natural" was not a written warranty under MMWA because it did not warrant that the product was free from defect or promise specified level of performance, but rather was description of product); *Chufen Chen v. Dunkin' Brands, Inc.*, No. 17-cv-3808 (CBA)(RER), 2018 WL 9346682, at *6 (E.D.N.Y. Sept. 17, 2018), *aff'd*, 954 F.3d 492 (2d Cir. 2020) (holding that Defendant's use of the term "Angus beef" was a product description, not a written warranty under the MMWA).  Therefore, Defendant's motion to dismiss Plaintiff's MMWA claim is granted.

### g.  Unjust Enrichment

Plaintiff's unjust enrichment claim is dismissed as duplicative.  "To establish unjust enrichment, the plaintiff must show '(1) the other party was enriched, (2) at the other party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered.'"  *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 473 (S.D.N.Y. 2020) (quoting *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 567 (S.D.N.Y. 2016)).  However, "unjust

enrichment is not a catchall cause of action to be used when others fail." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Izquierdo*, 2016 WL 6459832, at *10 (quoting *Corsello*, 18 N.Y.3d 777 at 790–91 (2012) (internal quotation marks omitted). "And an unjust enrichment claim 'will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action.'" *Hesse*, 463 F. Supp. 3d at 473–74 (quoting *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017)).

The allegations in the First Amended Complaint demonstrate that this count is duplicative of Plaintiff's other claims. The entirety of Plaintiff's unjust enrichment count reads, "Plaintiff incorporates by reference all preceding paragraphs. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits." FAC ¶¶ 130–31. Thus, the unjust enrichment claim is a mere repackaging of her other claims based on the alleged misrepresentations on the Product's packaging. It "relies on the same factual allegations and the same theory of liability" as Plaintiff's other theories of recovery. *Hesse*, 463 F. Supp. 3d at 474 (dismissing unjust enrichment claim as duplicative of other claims alleging defendant's chocolate label was misleading); *see also Alce v. Wise Foods, Inc.*, No. 17-cv-2402 (NRB), 2018 WL 1737750, at *12 (S.D.N.Y. Mar. 27, 2018) (dismissing unjust enrichment claim as duplicative because the unjust enrichment allegations were "a mere regurgitation of those made with respect to plaintiffs' slack-fill claims under the GBL . . ."). As a result, Plaintiff's unjust enrichment

claim is dismissed as duplicative.[16]  Defendant's motion to dismiss Plaintiff's unjust enrichment
claim is granted.

### h.  Plaintiff Does Not Have Standing to Pursue Injunctive Relief

Plaintiff does not have standing to pursue injunctive relief because she is aware of the
allegedly deceptive packaging, and therefore cannot demonstrate that she will be harmed in a similar
way in the future.  "A plaintiff seeking to represent a class must personally have standing."  *Nicosia v.
Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).  "Plaintiffs lack standing to pursue injunctive
relief where they are unable to establish a 'real or immediate threat' of injury."  *Id.* (quoting *City of
Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983)).  "Although past injuries may provide a basis for
standing to seek money damages, they do not confer standing to seek injunctive relief unless the
plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way."  *Id.*  "In
a deceptive business practices action under GBL §§ 349 and 350, the Second Circuit has determined
that absent an intent to 'purchase the offending product in the future,' a plaintiff lacks standing to
seek injunctive relief."  *Yee Ting Lau v. Pret A Manger (USA) Ltd.*, No. 17-cv-5775 (LAK), 2018 WL
4682014, at *2 (S.D.N.Y. Sept. 28, 2018) (quoting *Kommer v. Bayer Consumer Health*, 710 Fed. App'x
43, 44 (2d Cir. 2018)).

The Second Circuit recently reaffirmed this conclusion in the context of a consumer
confronted by allegedly deceptive packaging in *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146–49 (2d Cir.
2020).  The Circuit reasoned, in part:

> In the first place, past purchasers are not bound to purchase a product again—
> meaning that once they become aware they have been deceived, that will often be the
> last time they will buy that item . . . .  But even if they do purchase it again, there is
> no reason to believe that all, or even most, of the class members will incur a harm

---

[16] That Plaintiff asserts that she brings this claim in the alternative does not change the analysis.  *See Nelson*, 246 F. Supp.
at 679 (E.D.N.Y. 2017) (holding that while "[i]t is certainly true, as Plaintiff argues, that she may plead unjust enrichment
in the alternative to his other claims[,] . . . it is equally true that, even pleaded in the alternative, claims for unjust
enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not
merely duplicative of their other causes of action.").

> anew.  Supposing that they have been deceived by the product's packaging once,
> they will not again be under the illusion that the boxes of the newer pastas are filled
> in the same way as the boxes of the older pastas.  Instead, next time they buy one of
> the newer pastas, they will be doing so with exactly the level of information that they
> claim they were owed from the beginning.

*Id.* at 147–48.[17]

 As in *Berni,* Plaintiff has not shown that she is likely to be harmed again in the future in a similar way.  Plaintiff alleges that had she known the truth about the Product, she would not have purchased it or she would have paid less.  *Id.* ¶ 74.  She now knows the truth.  She "intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's label is lawful and consistent with the Product's ingredients."  *Id.* ¶ 95.  Plaintiff says that she won't buy the product if the label remains misleading.  If she does purchase the product again in the future, she will not be harmed in a similar way, because any future purchase will be made with knowledge of the product's ingredients, and because she will only purchase the product if the allegedly misleading representations of which she complains are fixed.  Therefore, Plaintiff lacks standing.  *See, e.g., Sharpe v. A&W Concentrate Co.*, No. 19-cv-768 (BMC), 2020 WL 4931045, at *4 (E.D.N.Y. Aug. 24, 2020) ("On the face of the complaint, plaintiffs concede that they would not have purchased the sodas if they had known of the beverages' true vanilla composition.  And now that they are aware of the drink's ingredients, plaintiffs state they do not intend to purchase it again, unless defendants change either the product or the labeling.  Because plaintiffs admit that they are unlikely to purchase the products at issue, unless the products are changed, they lack standing to seek injunctive relief.").

 Plaintiff attempts to distinguish *Berni* because the ruling was issued in the context of a motion for class certification, rather than a motion to dismiss.  But the reasoning behind the Circuit's decision in *Berni* applies equally here.  In *Berni*, the Second Circuit found that because there

---

[17] The Circuit went on to reject the policy-based rationale that underpins most of the cases on which Plaintiff relies, including an explicit rejection of Judge Weinstein's decision in *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015), on which Plaintiff relies  *Berni*, 964 F.3d.at 148–49.

was no likelihood of future harm, there was no standing to seek an injunction.  And because "courts cannot permit injunctive relief through class settlement when plaintiffs would otherwise lack standing to seek such relief under Article III," the Second Circuit denied class certification.  *Berni*, 964 F.3d. at 148–49.  The analysis of future harm does not change depending on whether the Court is considering a motion to dismiss or a motion for class certification.[18]  Here too, Plaintiff lacks standing to pursue injunctive relief, on behalf of herself or the class, because she has not alleged that she will be harmed again in the future.  Defendant's motion to dismiss Plaintiff's request for injunctive relief on behalf of herself and on behalf of the putative class is granted.

## IV.     CONCLUSION

Defendant's motion to dismiss the First Amended Complaint is GRANTED in part and DENIED in part.  Defendant's motion to dismiss Plaintiff's claims under Sections 349 and 350 of the GBL is DENIED.  Defendant's motion to dismiss all other claims is GRANTED.  Moreover, Plaintiff lacks standing to pursue injunctive relief on behalf of herself or the putative class, so Defendant's motion to dismiss her request for injunctive relief is also GRANTED.

Plaintiff is granted leave to replead the claims that have been dismissed by the Court.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead.").  Any amended complaint must be filed no later than twenty-one days from the date of this order.

---

[18] In the months since *Berni* was decided, district courts have uniformly applied *Berni* in the context of motions to dismiss.  *See Rivera v. Navient Sols., LLC*, No. 20-cv-1284 (LJL), 2020 WL 4895698, at *14 (S.D.N.Y. Aug. 19, 2020) (stating that "*Berni* is dispositive here" and holding on a motion to dismiss that the plaintiff lacked standing to pursue injunctive relief because even if the plaintiff did because "[h]e alleges that he was misled by the language on the Navient billing statement.  Even if he became a debtor again on a student loan serviced by Navient, there is no reason to believe he will be under the same illusion again."); *Kennedy*, 2020 WL 4006197, at *5 (relying on *Berni* in dismissing plaintiffs' claim for injunctive relief where, like here, plaintiffs alleged that they "*would* consider purchasing the Products again *if* there were assurances that the Products' representations were no longer misleading" because "as alleged, if the labels are deemed deceptive, Plaintiffs would not purchase the products (and therefore not have any standing to sue and not suffer any injury).  If the labels are non-deceptive, there can be no injury suffered (and therefore there is no injunctive relief to be award[ed]).  And even if they did purchase the products as is, they would be doing so with exactly the level of information that they claim they were owed from the beginning, so they would not be harmed.") (some internal quotation marks omitted) (emphasis in original).

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 22.

SO ORDERED.

Date:   February 2, 2021

_____
GREGORY H. WOODS
United States District Judge